706 A.2d 1177

IN THE MATTER OF THE NOVEMBER 8, 1996, DETERMINATION OF THE STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, UNCLAIMED PROPERTY OFFICE.

Superior Court of New Jersey
Appellate Division

Submitted December 3, 1997—Decided March 10, 1998.

---

Before Judges BROCHIN, WEFING and BRAITHWAITE.

*Bourne, Noll & Kenyon*, attorneys for appellant, the Hilton at Short Hills (*Michael O'B. Boldt*, on the brief).

*Peter Verniero*, Attorney General of New Jersey, attorney for respondent Department of Treasury, Unclaimed Property Administrator (*Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Kevin M. Wolfe*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

The Uniform Unclaimed Property Act, *N.J.S.A.* 46:30B–1 to – 109 (the "Act" or the "New Jersey Act"), establishes a procedure by which intangible property[1] that is presumed abandoned is transferred to the State as custodian for the absent owner.[2] As part of that procedure, a person holding property subject to the Act that is "presumed abandoned" pursuant to its terms is required to report that property to the State. *N.J.S.A.* 46:30B–46 to –49. Appellant, the Hilton at Short Hills, appeals from a determination by respondent, Department of the Treasury, that gift certificates are among the kinds of intangible property which are subject to the Act and must be reported to the State when "presumed abandoned."

As part of its operations, Hilton issues gift certificates which are valid for only one year. The gift certificates are redeemable only for services or merchandise. Hilton asked Treasury whether unredeemed gift certificates were covered by the Act and had to

---

[1] The Act also encompasses tangible property "held in a safe deposit box or any other safekeeping repository in this State." *N.J.S.A.* 46:30B–45.

[2] Seventy-five percent of all proceeds from property received by the State (except abandoned child support funds) is transferred from the unclaimed property trust funds to the General State Fund; the balance is used to pay claims of persons who establish their ownership of the presumptively abandoned property in the State's custody. *N.J.S.A.* 46:30B–74.

be reported to the State. In accordance with advice from the Attorney General, Treasury responded by a letter dated November 8, 1996, asserting its position that gift certificates are subject to the Act.

■ Treasury contends that Hilton's appeal should be dismissed because the Treasury's November 8, 1996 letter is not final agency action and is therefore not appealable as of right. We disagree. An appeal may be taken as of right "to review final decisions or actions of any state administrative agency or officer." *R.* 2:2–3(a)(2). Although Treasury relied on an opinion of the Attorney General, the letter expresses Treasury's definitive position with respect to what it declared to be Hilton's obligation to file a report pursuant to the Act. Its ruling therefore constitutes a final agency decision or action and is properly before us for review. *Cf. New Jersey Civil Svc. Ass'n v. State,* 88 *N.J.* 605, 612, 443 *A.*2d 1070 (1982) (following advice of Attorney General "is tantamount to [a] final agency action").

■ The New Jersey Senate Judiciary Committee Statement to the bill which became the New Jersey Act states:

> This bill is aimed at revising New Jersey escheat law (N.J.S.A. 2A:37–1 et seq.) to conform with the "Uniform Unclaimed Property Act (1981)", promulgated by the National Conference of Commissioners on Uniform State Laws.
>
> [Senate No.2093, L.1989, c. 58.]

However, the New Jersey Act deviates from the *Uniform Unclaimed Property Act,* 8B *U.L.A.* 567 (1981) ("1981 Model Act") [3] by omissions which are of particular significance to the present case. The 1981 Model Act covers "[e]xcept as otherwise provided by this Act, all intangible property." *Id.* § 2(a), 8B *U.L.A.* at 595. It defines intangible property in part as including:

> credit balances, customer overpayments, *gift certificates,* security deposits, refunds, credit memos, unpaid wages, unused airline tickets, and unidentified remittances.

---

[3] The 1995 version of the Model Act supersedes the 1981 version. *Unif. Unclaimed Property Act,* 8B *U.L.A.* at 1997 supp. 68 ("1995 Model Act"). New Jersey, however, has not adopted the 1995 version.

[*1981 Model Act* § 1(10)(ii), 8B *U.L.A.* at 590 (emphasis added).]

Section 14 of the 1981 Model Act provides that:

(a) A *gift certificate* or a credit memo issued in the ordinary course of an issuer's business which remains unclaimed by the owner for more than 5 years after becoming payable or distributable is presumed abandoned.

(b) In the case of a *gift certificate*, the amount presumed abandoned is the price paid by the purchaser for the *gift certificate.* In the case of a credit memo, the amount presumed abandoned is the amount credited to the recipient of the memo.

[*Id.* § 14, 8B *U.L.A.* at 625 (emphasis added).]

The New Jersey Act also covers "intangible property." *N.J.S.A.* 46:30B–9. As defined by the Act,

i. "Intangible property" includes:

. . .

(2) Credit balances, customer overpayments, security deposits, refunds, credit memos, unpaid wages, unused airline tickets, and unidentified remittances.

[*N.J.S.A.* 46:30B–6i.]

The words "gift certificates" are omitted from *N.J.S.A.* 46:30B–6i. The New Jersey Act's counterparts to § 14 of the 1981 Model Act, *N.J.S.A.* 46:30B–42 and –43, also omit any reference to gift certificates.

The legislative history of the New Jersey Act shows that the omission from the Act of any reference to gift certificates was intentional. An early draft of the Act includes the 1981 Model Act's references to gift certificates. *See* Assembly Reprint, Senate No. 888. A later version, adopted by a Senate committee in May 1986, states that the Act applies only to gift certificates issued after July 1, 1986. *See id.* at 38. A subsequent draft, prepared by an Assembly committee in May 1987, deletes all references to gift certificates. *See id.* at 3, 8, 18, 38. The final bill, which became the New Jersey Act, follows that Assembly draft in omitting all references to gift certificates.

All of the categories of intangible personal property expressly covered by the New Jersey Act or the 1981 Model Act, are, as a practical matter, claims for the payment of money. The category of ownership of "[s]tocks and other intangible ownership interests in business associations" generally confers the right to distributions which are made in cash or in a form readily convertible to

cash. *See N.J.S.A.* 46:30B–31. The other categories of intangible property expressly enumerated in the Act are claims which must be satisfied by the payment of readily ascertainable amounts of money, either on demand, or on determinable dates, or on the occurrence of specified contingencies. *See, e.g., N.J.S.A.* 46:30B–18 (bank deposits); *N.J.S.A.* 46:30B–29 (deposits held by utilities). Intangible property not expressly listed in the Act which we have held to fall within its coverage have also all been claims dischargeable by the payment of money. *See, e.g., Hannoch Weisman v. Brunetti,* 15 *N.J.Tax* 197 (App.Div.1995) (tax refunds); *State v. Elsinore Shore Assocs.,* 249 *N.J.Super.* 403, 592 *A.2d* 604 (App. Div.1991) (casino gaming chips and slot machine tokens). When any of these claims to the payment of money are transferred to the State, the obligors can readily discharge them by paying the State what they would have paid to the prior owners. *See N.J.S.A.* 46:30B–57 (obligor must pay to the State unclaimed property listed in unclaimed property report "and accretions thereon"); *N.J.S.A.* 46:30B–61 (upon payment to State, obligor "is relieved of all liability" to owner for value of property paid to State).

■ The issuers of gift certificates, however, frequently do not bind themselves to pay money. The contractual terms of the Hilton gift certificates which are the subject of this suit provide that they can be redeemed only for services or merchandise. We have denied the State the right to exact cash by escheating obligations which do not bind the obligor to pay money. *State v. Sperry & Hutchinson Co.,* 56 *N.J.Super.* 589, 153 *A.2d* 691 (App.Div.1959), *aff'd o.b.,* 31 *N.J.* 385, 157 *A.2d* 505 (1960), is such a case. Sperry & Hutchinson sold S & H green stamps to retailers; the retailers gave them to customers as a non-cash discount; customers redeemed the green stamps for merchandise at S & H redemption centers. *Id.* at 593–94, 153 *A.2d* 691. At least five percent of S & H green stamps were never presented for redemption. *Id.* at 598, 153 *A.2d* 691. Pursuant to statute, *N.J.S.A.* 45:23–3, a small monetary value was assigned to each

stamp. *Id.* at 596–97, 153 *A.*2d 691. The State claimed that the aggregate value of these unredeemed stamps was subject to escheat under a statute which was a predecessor to the Act. *Id.* at 592, 153 *A.*2d 691. The customer was entitled to redeem the stamps, either for a nominal amount of cash or for merchandise at the customer's option, only by presenting completely filled stamp books. *Id.* at 596, 153 *A.*2d 691. The State was unable to prove the existence of any specified number of such unclaimed, completely filled stamp books. *Ibid.* Because S & H was not obligated to redeem partially filled stamp books, we rejected the State's claim. *Id.* at 603–04, 153 *A.*2d 691. Our Supreme Court has also held that, by virtue of our State Constitution, debts already barred by a statute of limitations are not subject to escheat because the creditor would not be entitled to payment. *State v. Western Union Tel. Co.,* 17 *N.J.* 149, 151, 158, 110 *A.*2d 115 (1954); *State v. Standard Oil Co.,* 5 *N.J.* 281, 296–97, 74 *A.*2d 565, *aff'd,* 341 *U.S.* 428, 71 *S.Ct.* 822, 95 *L.Ed.* 1078 (1950).[4]

■ The implication of these cases is that the Act cannot, and therefore presumably was not intended to, impose an obligation different from the obligation undertaken to the original owner of the intangible property which it covers. Since the Hilton gift certificates are, by their terms, redeemable only for services and merchandise and not for money, we are confident that the Legislature did not intend to include them among the "intangible personal property" which must be reported and transferred to the State to be converted to cash for the State's use pursuant to the Act.

Our understanding of the Act is supported by the fact that other states treat gift certificates differently from other intangible personal property for escheat purposes, presumably because of their peculiar characteristics. Some states have expressly excluded all

---

[4] Of course, a corporation's adoption of a private "statute of limitations" to circumvent an escheat statute is invalid. *State v. Jefferson Lake Sulphur Co.,* 36 *N.J.* 577, 596, 178 A.2d 329, *cert. denied,* 370 *U.S.* 158, 82 S.Ct. 1253, 8 *L.Ed.*2d 402 (1962).

gift certificates from their abandoned property laws. *See, e.g., Fla.Stat.Ann.* § 717.114 (West 1997); *Or.Rev.Stat.* §§ 98.302, 98.338. Other states make only certain types of gift certificates subject to escheat, *see, e.g., Colo.Rev.Stat.Ann.* § 38-13-108.4 (West 1997) (gift certificates redeemable for food, products, goods, and services are not covered; those redeemable for cash are); *Idaho Code* § 14-514(1) (1997) (gift certificates without expiration dates are covered); *Wyo.Stat.Ann.* § 34-24-114(a) (Michie 1997) (gift certificates in excess of $100 are covered), or make a special provision for valuing gift certificates. *See, e.g., Del.Code Ann. tit.* 12, § 1198(10) (1997) (value of gift certificates redeemable only for merchandise is "the maximum cost to the issuer of merchandise represented by the certificate"); 1997 *Mont. Laws* ch. 124, S.B. no. 125 § 3(g) (value of gift certificates redeemable only for merchandise is 60% of the face value of the certificate); *see also 1995 Model Act* § 2(a)(7), 8B *U.L.A.* at 1997 supp. 72–73 (for gift certificates *"redeemable in merchandise only, the amount abandoned is deemed to be [60] percent of the certificate's face value "*) (emphasis added).

Treasury argues that even if gift certificates are not "intangible personal property" within the meaning of the Act, the State may nonetheless collect the unclaimed funds which they represent under the common law doctrine of *bona vacantia.*[5] The only

---

[5] *Bona vacantia* is defined as "[g]enerally personal property which escheats to [a] state because no owner, heir or next of kin claims it." *Black's Law Dictionary* 161 (5th ed.1979). The doctrine has been discussed in relatively few New Jersey cases. No reported New Jersey case has applied it. The doctrine was applied at common law when the owner of personal property was non-existent and when the known owner had abandoned the property or could not be located. *See, e.g., State v. American Can Co.,* 42 *N.J.* 32, 37, 198 *A.2d* 753, *cert. denied,* 379 *U.S.* 826, 85 *S.Ct.* 53, 13 *L.Ed.2d* 36 (1964) ("[T]he doctrine was extended to personal property which had no owner or whose owner or owner's whereabouts was unknown."); *Standard Oil, supra,* 5 *N.J.* at 297, 74 *A.2d* 565 ("In modern usage 'escheat' signifies the falling of property to the sovereign for want of an owner; and this category embraces not only property which has no other owner, but also property whose owner or whose owner's whereabouts is

reference to *bona vacantia* in the Act reads: "The common law doctrine of bona vacantia shall remain viable with respect to unclaimed property not covered by this chapter or another statute of this State." *N.J.S.A.* 46:30B–9. That provision, even if it were applicable to Hilton's gift certificates, would not subject Hilton to the regulatory scheme of the Act. The State has not shown that the common law would give the State the benefit of any presumption of abandonment. It would not provide for custodianship prior to the State's having proved that the gift certificates were ownerless and it would not make the gift certificates redeemable for cash. Most pertinently of all for present purposes, the State's *bona vacantia* argument, even if we agreed with it, would not support the ruling which is the subject of this appeal, *i.e.*, that Hilton is obligated to report unclaimed gift certificates under the Act. It is therefore unnecessary for us to attempt to determine what, if any, intangible personal property might pass to the State under the doctrine of *bona vacantia* and under what circumstances it might be applicable.

The ruling appealed from is therefore reversed.

---

unknown.... The doctrine ... was eventually extended to include [tangible and intangible personal property].").