NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2973-14T31
 A-4880-14T3

BBB VALUE SERVICES, INC.,

 Appellant,
 APPROVED FOR PUBLICATION
v.
 September 21, 2017
TREASURER, STATE OF NEW
JERSEY, DEPARTMENT OF THE APPELLATE DIVISION
TREASURY; ADMINISTRATOR,
STATE OF NEW JERSEY
UNCLAIMED PROPERTY
ADMINISTRATION,

 Respondent.
_______________________________

BED BATH & BEYOND INC.,

 Appellant,

v.

TREASURER, STATE OF NEW
JERSEY, DEPARTMENT OF THE
TREASURY; ADMINISTRATOR,
STATE OF NEW JERSEY
UNCLAIMED PROPERTY
ADMINISTRATION,

 Respondent.
________________________________

 Argued February 14, 2017 – Decided September 21, 2017

 Before Judges Messano, Espinosa and Suter.

1
 These are back-to-back appeals consolidated for the purpose of
this opinion because the cases share the same legal issue.
 On appeal from the Department of the Treasury,
 Unclaimed Property Administration.

 Ethan D. Millar (Alston & Bird, LLP) of the
 California bar, admitted pro hac vice, argued
 the cause for appellants (Alston & Bird, LLP,
 and Mr. Millar, attorneys; Karl Geercken,
 Matthew C. Decker, Steven L. Penaro, Michael
 M. Giovannini (Alston & Bird, LLP) of the
 North Carolina bar, admitted pro hac vice, and
 Mr. Millar, on the briefs in A-2973-14; Mr.
 Geercken, Mr. Penaro, Mr. Giovannini and Mr.
 Millar, on the briefs in A-4880-14).

 Marc Alan Krefetz, Deputy Attorney General,
 argued the cause for respondent (Christopher
 S. Porrino, Attorney General, attorney;
 Melissa H. Raksa, Assistant Attorney General,
 of counsel; Mr. Krefetz, on the briefs).

 The opinion of the court was delivered by

SUTER, J.A.D.

 In A-4880-14, Bed Bath & Beyond, Inc. (BB&B) appeals the May

21, 2015 final agency decision of the Treasury Department's

Unclaimed Property Administration (UPA) that denied BB&B's claim

for a refund of the value of certain unclaimed merchandise return

certificates (certificates). In A-2973-14, BBB Value Services,

Inc. (BBB-VSI) appeals the UPA's January 14, 2015 denial of a

similar refund claim. We reverse the UPA's denial in A-4880-14

because BB&B was not required by New Jersey's Uniform Unclaimed

Property Act, N.J.S.A. 46:30B-1 to -109 (UUPA), to remit these

unclaimed certificates. In A-2973-14, we reverse for other

 2 A-2973-14T3
reasons, concluding that the certificates constitute "stored value

cards" within the meaning of the UUPA, but that their value was

remitted prematurely.

 I.

 BB&B is a large, nationwide retailer of domestic merchandise

and home furnishings. BBB-VSI is a wholly owned subsidiary of

BB&B. For customers who return merchandise to BB&B without a

receipt, BB&B issues a certificate, which is redeemable at BB&B

or an affiliated store for other merchandise or services, but not

for cash except as may be required by state consumer protection

laws. Issued certificates include a bar code referencing data

stored on BB&B's network and system database.2 Customers who have

receipts are able to obtain a refund in cash. Here, the cases

involve only certificates issued for returns made without a

receipt.

 Some customers in New Jersey have not redeemed their

certificates. From July 1, 1999 to June 30, 2010, the unused

balances of these certificates had a remaining value, taken

together, of $939,341.16. From 2004 and continuing annually until

2012, BB&B reported and remitted the value of the unredeemed

certificates to the UPA as unclaimed property.

2
 We have not been provided with a copy of the certificate template.

 3 A-2973-14T3
 In January 2015, BB&B requested a refund of the value of

these certificates, claiming "[s]ince the merchandise return

certificates are . . . not redeemable for cash, they are not

'claims for the payment of money' and thus are . . . not covered

by the UUPA" and "remain the property of BB&B." The UPA denied

the request, treating the certificates as "credit memoranda" under

the UUPA because they involved the "return[] of sold goods" and

"not original sales." Concluding that BB&B had "an expectation

of paying cash in this type of transaction," the UPA stated that

"it is the underlying obligation that determines the correct

statutory provision that applies and not the form of the instrument

used to record the credit." Credit memoranda are presumed

abandoned after three years of inactivity. Therefore, the UPA

found that BB&B properly reported the unclaimed funds, and denied

the refund. BB&B appeals the UPA's May 21, 2015 denial.

 From July 1, 2010 to June 30, 2011, BBB-VSI issued the same

type of certificates to customers with New Jersey addresses, who

returned merchandise without a receipt. The unused portion of

those certificates totaled $244,552.57. In November 2014, BBB-

VSI reported these as credit memoranda and remitted their aggregate

value ($244,552.57) to the UPA.

 In early January 2015, BBB-VSI requested a refund, claiming

it had erred. It advised the UPA that the certificates constituted

 4 A-2973-14T3
"stored value cards" under the UUPA. As such, they were not

presumed abandoned until after five years of inactivity, and even

then the amount presumed abandoned is "60% of the value of the

card on the date the stored value card is presumed abandoned."

Thus, BBB-VSI's position was that it had reported the unredeemed

value too soon and paid too much.

 The UPA denied the requested refund on January 14, 2015,

contending that the certificates were credit memoranda under the

UUPA. BBB-VSI appealed. With leave granted, the UPA filed an

amplification of reasons that reiterated its contention that the

"certificates do not represent original sales of services or

merchandise but rather refunds for returned merchandise previously

sold" and should be treated as credit memoranda under the UUPA.

 With respect to the certificates issued before July 1, 2010,

BB&B contends on appeal that the UPA erred in denying its requested

refund. The certificates "do not represent obligations to pay

money," they are not property within the scope of the UUPA, as

construed by this court, and the escheat of these funds is

inconsistent with New Jersey's consumer protection law involving

refunds. Further, it contends the decision not to grant a refund

violates a federal court injunction, and the decision violates

provisions of the New Jersey and federal constitutions including

the single-object rule, the contract clause, the takings clause,

 5 A-2973-14T3
the due process clause and the federal common law. BB&B seeks

interest on any refunded monies.

 With respect to the certificates issued after July 1, 2010,

BBB-VSI claims it had no obligation to remit funds for these stored

value cards in 2014 and remitted forty percent more than required.

If these are not stored value cards, then they are not subject to

the UUPA at all because the certificates are not obligations to

pay money. BBB-VSI contends that the escheat of the value of the

stored value cards violates the federal and state constitutions.3

 II.

 Our scope of review of these administrative agency decisions

is limited. Agency decisions are sustained unless they are

arbitrary, capricious, or unreasonable; unsupported by substantial

credible evidence in the record; or contrary to express or implied

legislative policies. Saccone v. Bd. of Trs. of Police and

Firemen's Ret. Sys., 219 N.J. 369, 380 (2014); Lavezzi v. State,

219 N.J. 163, 171 (2014). "The burden of demonstrating that the

agency's action was arbitrary, capricious or unreasonable rests

upon the [party] challenging the administrative action." In re

Arenas, 385 N.J. Super. 440, 443-44 (App. Div.), certif. denied,

3
 The cases involve the same constitutional claims with one
exception. BBB-VSI does not claim a violation of the federal or
state contract clauses.

 6 A-2973-14T3
188 N.J. 219 (2006). "[G]enerally, when construing language of a

statutory scheme, deference is given to the interpretation of

statutory language by the agency charged with the expertise and

responsibility to administer the scheme." Acoli v. N.J. State

Parole Bd., 224 N.J. 213, 229 (2016) (citing U.S. Bank, N.A. v.

Hough, 210 N.J. 187, 199 (2012)). However, we are not "bound by

[the] agency's interpretation of a statute or its determination

of a strictly legal issue[.]" Lavezzi, supra, 219 N.J. at 173

(quoting Norfolk S. Ry. Co. v. Intermodel Props., LLC, 215 N.J.

142, 165 (2013)).

 A.

 The UUPA was enacted in 1989 to "revis[e] New Jersey escheat

law (N.J.S.A. 2A:37-1 et seq.) to conform with the 'Uniform

Unclaimed Property Act (1981)' . . . ."4 Senate Judiciary

Committee Statement to S. 2093 (1988) (reprinted in N.J.S.A.

46:30B-1). The UUPA differed from the earlier "absolute" escheat

laws where the owner forfeited property to the State by providing

that "the title to unclaimed property does not vest in the State,

but rather remains in the owner." Clymer v. Summit Bancorp, 171

N.J. 57, 63 (2002). In Clymer, the Court gave the Act a "broad

interpretation in favor of the State[,]" id. at 67, recognizing

4
 8C U.L.A. 225-346 (2014).

 7 A-2973-14T3
that "the public policy of the State is in favor of the custodial

taking of abandoned or unclaimed property by the State Treasurer."

Ibid. (quoting Safane v. Cliffside Park Borough, 5 N.J. Tax 82,

88 (Tax 1982)). The UUPA is to be "given a liberal interpretation

in favor of the State and as to the position of any stakeholder

or obligor." Ibid.

 The "holder" of property presumed abandoned is required to

file an annual report with the UPA and to remit such property to

the State. N.J.S.A. 46:30B-46 to -49; N.J.S.A. 46:30B-57. A

filer may ask to recover property erroneously reported. N.J.S.A.

46:30B-58.

 Under the UUPA, "the State takes custody of the property and

has full use of it until the rightful owner comes forward to claim

it." Clymer, supra, 171 N.J. at 63. A person who claims an

interest in the funds may file a claim. N.J.S.A 46:30B-77. The

State pays interest on claims that are verified "for the period

during which those monies were in the custody of the administrator

. . . ." N.J.S.A. 46:30B-79. The prior holder of the unclaimed

property paid to the administrator in good faith "is relieved of

all liability to the extent of the value of the property paid

. . . ." N.J.S.A. 46:30B-61.

 As originally enacted in 1989, the UUPA defined intangible

property to include, among other things, "[c]redit balances,

 8 A-2973-14T3
customer overpayments, security deposits, refunds, credit memos,

unpaid wages, unused airline tickets, and unidentified

remittances." L. 1989, c. 58, § 6 (emphasis added). The term

"credit memos" was not defined in the Act. However, the Act

expressly provided the time frame of inactivity needed before

these types of property were presumed abandoned.5 N.J.S.A. 46:30B-

42. "[T]he amount presumed abandoned is the amount credited to

the recipient." N.J.S.A. 46:30B-43. We concluded that "the

categories of intangible personal property expressly covered by

the [UUPA], are, as a practical matter, claims for the payment of

money." In re the Nov. 8, 1996, Determination of State, Dep't.

of Treasury, Unclaimed Prop. Office, 309 N.J. Super. 272, 276

(App. Div. 1998), aff'd o.b., 156 N.J. 599 (1999) (1996

Determination).

 At issue in 1996 Determination was the UUPA's treatment of

gift certificates. New Jersey did not adopt the portion of the

Uniform Unclaimed Property Act (1981)6 that included gift

certificates within the definition of intangible property. We

5
 As enacted in 1989, the period of inactivity was five years. L.
1989, c. 58, § 1. In 2002, it was shortened to three years. L.
2002, c. 35, § 35. See N.J.S.A. 46:30B-42.
6
 1996 Determination, supra, 309 N.J. Super. at 276 refers to the
Uniform Unclaimed Property Act (1981) as the 1981 Model Act.

 9 A-2973-14T3
determined this omission was intentional. Ibid. After examining

the categories of intangible property expressly enumerated in the

Act and other property not listed, but which we determined

constituted intangible property,7 we concluded that all such

property were "claims which must be satisfied by the payment of

readily ascertainable amounts of money, either on demand, or on

determinable dates, or on the occurrence of specified

contingencies." Id. at 277. Because the Hilton gift certificates

at issue in 1996 Determination could only be redeemed for services

and merchandise, we concluded "the Legislature did not intend to

include them among the 'intangible personal property' which must

be reported and transferred to the State to be converted to cash

for the State's use pursuant to the Act." Id. at 278. We stated

that the UUPA "presumably was not intended to[] impose an

obligation different from the obligation undertaken to the

original owner of the intangible property which it covers." Ibid.

We concluded Hilton was not required to report unclaimed gift

certificates under the UUPA.

 The UUPA was amended in 2002. L. 2002, c. 35. The Legislature

relocated the categories of property formerly listed as intangible

7
 See Hannoch Weisman v. Brunetti, 15 N.J. Tax 197 (App. Div. 1995)
(tax refunds); see also State v. Elsinore Shore Assocs., 249 N.J.
Super. 403 (App. Div. 1991) (casino chips and tokens).

 10 A-2973-14T3
to a new, all-inclusive definition for "property." L. 2002, c.

35, § 3 (codified as N.J.S.A. 46:30B-6(r)). In doing so, the

Legislature changed the term "credit memos," to "credit

memorandum," but continued not to define the term. Ibid. "Gift

certificates" were not added to the UUPA. There was no indication

that "property" was to include anything other than claims for the

payment of money.

 The UUPA was amended in 2010, effective on July 1, 2010. L.

2010, c. 25. The definition of "property" continued to include

"credit memorandum," but for the first time it included the term

"stored value card." L. 2010, c. 25, § 1 (codified as N.J.S.A.

46:30B-6(r)). A stored value card under the UUPA is defined as

 a record that evidences a promise, made for
 monetary or other consideration, by the issuer
 or seller of the record that the owner of the
 record will be provided, solely or a
 combination of, merchandise, services, or cash
 in the value shown in the record, which is
 pre-funded and the value of which is reduced
 upon each redemption. The term 'stored value
 card' includes, but is not limited to the
 following items: paper gift certificates,
 records that contain a microprocessor chip,
 magnetic stripe or other means for the storage
 of information, gift cards, electronic gift
 cards, rebate cards, stored-value cards or
 certificates, store cards, and similar records
 or cards.

 [N.J.S.A. 46:30B-6(t) (emphasis added).]

 11 A-2973-14T3
 Under the 2010 amendment, a stored value card that had no

activity within two years was presumed to be abandoned. L. 2010,

c. 25, § 5. Certain types of stored value cards were exempt from

the UUPA. L. 2010, c. 25, § 5 (codified as N.J.S.A. 46:30B-

42.1(e), (f)). The 2010 amendments expressly applied to stored

value cards "outstanding on and after July 1, 2010, including, but

not limited to, those outstanding instruments issued before July

1, 2010." L. 2010, c. 25, § 9.

 This amendment "change[d] the legal landscape in New Jersey

. . . ." Am. Express Travel Related Svcs. Co. v. Sidamon-Eristoff,

755 F. Supp. 2d 556, 566 (D.N.J. 2010), aff'd, 669 F. 3d 359 (3d

Cir.), cert. denied, 568 U.S. 887, 133 S.Ct. 345, 184 L. Ed. 2d

157 (2012) (Amex). The 2010 Amendment subjected obligations

redeemable for merchandise or services to the UUPA.

 Relevant here, the UUPA was amended effective June 29, 2012

to include a cash back provision for consumers who redeemed stored

value cards with refund balances of less than $5, but that

provision did not apply to "a stored value card that is not

purchased but is provided in lieu of a refund for returned

merchandise." L. 2012, c. 14, § 1 (codified as N.J.S.A. 46:30B-

42.1(h)). It extended to five years the period of inactivity

required before a stored value card was presumed abandoned. L.

2012, c. 14, § 1 (codified as N.J.S.A. 46:30B-42.1(a)). For non-

 12 A-2973-14T3
reloadable8 stored value cards, the proceeds are "60% of the value

of the card, in money, on the date the stored value card is

presumed abandoned." L. 2012, c. 14, § 1 (codified as N.J.S.A.

46:30B-42.1(b)).9

 B.

 Appeal A-4880-14 involves BB&B certificates, all of which

were issued before July 1, 2010, when the UUPA was amended to

include stored value cards. Because these certificates were only

redeemable for merchandise or services and they were not claims

for the payment of money, we agree with BB&B that these

certificates were not "property" within the meaning of the UUPA.

 We held in 1996 Determination that "[a]ll of the categories

of intangible personal property expressly covered by the [UUPA]

or the 1981 Model Act, are, as a practical matter, claims for the

payment of money." 309 N.J. Super. at 276. We did not rest our

decision on the fact that the Legislature intentionally decided

not to include gift certificates within the UUPA. Rather, we

8
 The UUPA defines a "general purpose reloadable card" as one
issued by a bank, regulated financial institution or licensed
money transmitter that can be used at multiple merchants or service
providers, is issued at a requested prepaid amount and may be
reloadable, but is not marketed or labeled as a gift card.
N.J.S.A. 46:30B-42.1(k).
9
 A 2015 amendment relieved merchants of the responsibility to
collect certain personal consumer data, not relevant to the issues
here. L. 2015, c. 8, § 1.

 13 A-2973-14T3
determined the Hilton gift certificates were not intangible

property under the UUPA because they were redeemable for

merchandise or services.

 BB&B's certificates, issued when a customer has no receipt,

are only redeemable for merchandise and services. In this way,

they are similar to the gift certificates in 1996 Determination.

If the Hilton gift certificates were not property under the UUPA

because they were not claims for the payment of money, then neither

are the BB&B certificates.

 The UPA contends that BB&B had an expectation of paying cash

to its customers because those who had receipts could receive cash

refunds. This appeal involves only certificates that were issued

to customers who had no receipts. They are redeemable for

merchandise or services. The record also does not show any

deviation by BB&B from this policy. The UPA claims that some

certificate holders might redeem their certificates in another

state that has a consumer protection law requiring a cash refund.

Others might purchase new merchandise, obtain a new receipt and

then return that item for cash. However, even if this occurred,

the UPA has not shown it would be anything more than de minimus,

nor, more fundamentally, that it altered in any way BB&B's

expectation that these certificates were issued for merchandise

or services.

 14 A-2973-14T3
 The UPA cites no support for its contention the UUPA made a

distinction between certificates that were purchased, referred to

by the UPA as "original sales of services or merchandise," and

these certificates that were issued as a credit for the return of

merchandise. The language of the statute does not make this

distinction nor was that any part of our reasoning in 1996

Determination.

 Even if these were credit memoranda,10 as the UPA contends,

they still would be subject to the same "payment of money"

limitation we identified in 1996 Determination. Thus, for the

certificates issued before July 1, 2010, we have no need to

determine if they are credit memos or something else, because they

are not claims for the payment of money under the UUPA.

 Because we conclude that the certificates issued before July

1, 2010, were not property under the UUPA, we do not need to

10
 Black's Law Dictionary defines "credit memorandum" as "[a]
document issued by a seller to a buyer confirming that the seller
has credited (i.e., reduced) the buyer's account because of an
error, return, or allowance. Black's Law Dictionary 375 (7th ed.
1999). Merriam Webster defines a "credit memorandum" as: "a
document issued by a seller to a customer as a confirmation that
the seller has made a credit adjustment to the customer's account
(as for merchandise returned or for errors)."
https://www.merriam-webster.com/dictionary/credit%20memorandum
(last visited Sept. 6, 2017).

 15 A-2973-14T3
address the constitutional claims made by BB&B regarding these

certificates. See Worthington v. Fauver, 88 N.J. 183, 192 (1982)

("an unnecessary decision on constitutional issues should be

avoided.") We also have no necessity to address BB&B's claim that

the certificates issued before July 1, 2010, are stored value

cards, the enforcement of which is enjoined by the federal court.11

 Therefore, in A-4880-14, we reverse the UPA's denial of BB&B's

refund. We remand the case to the UPA for calculation of the

refund and interest12 from May 21, 2015, when the refund request

was denied. We do not retain jurisdiction.

 C.

 The certificates issued by BBB-VSI on or after July 1, 2010,

require additional analysis because of the 2010 amendments that

defined the term "stored value cards" and included them within the

UUPA. See N.J.S.A. 46:30B-6(t). Although we have concluded the

BB&B certificates are not credit memoranda under the UUPA, supra,

we agree with BBB-VSI that the certificates issued on or after

11
 An injunction was entered in November 2010, prohibiting the UPA
from "enforcing Chapter 25 retroactively against issuers of stored
value cards with existing stored value card contracts that obligate
the issuers to redeem the cards solely for merchandise or
services." Amex, supra, 755 F. Supp. 2d at 615. The scope of
this injunction is not an issue before us.
12
 The State acknowledges that it will pay interest on a refund
under N.J.S.A. 46:30B-79.

 16 A-2973-14T3
July 1, 2010, were stored value cards. We apply the plain language

of the statute in reaching this conclusion.

 "Our task here, as in every matter involving statutory

construction, is the same: 'to divine and effectuate the

Legislature's intent.'" Acoli, supra, 224 N.J. at 227 (quoting

Perez v. Zagami, 218 N.J. 202, 209 (2014)); accord State v.

Buckley, 216 N.J. 249, 263 (2013). "The best evidence of that

intent is the plain language of the statute, which thus serves as

the starting point for statutory review." Ibid. Because the

plain language is clear, we have no need to "look beyond the

statutory text to extrinsic sources to aid in understanding the

Legislature's will." Ibid.

 A stored value card, like a certificate here, is a "record

that evidences a promise, made for monetary or other

consideration." BBB-VSI is the "issuer." The customer is the

"owner" who "will be provided, solely or a combination of,

merchandise, services, or cash in the value shown in the record,

which is pre-funded and the value of [the card] is reduced upon

each redemption." N.J.S.A. 46:30B-6(t). BBB-VSI acknowledges

these certificates are stored value cards.

 The Legislature's 2010 amendment expanded the UUPA's scope

by including instruments (stored value cards) issued for non-

monetary consideration. L. 2010, c. 25, § 1 (codified as N.J.S.A.

 17 A-2973-14T3
46:30B-6(t)). The 2012 amendments made this clear by providing

that a stored value card could encompass a card that "is not

purchased but is provided in lieu of a refund for returned

merchandise . . . ." N.J.S.A. 46:30B-42.1(h). The inclusion of

this language in the 2012 amendment undercuts the UPA's contention

that the UUPA makes a distinction between original sales and

returns because stored value cards include both.

 A stored value card is presumed to be abandoned after five

years of inactivity. N.J.S.A. 46:30B-42.1(a). These certificates

were issued between July 1, 2010 and June 30, 2011. BBB-VSI

reported the certificates as credit memoranda in November 2014 and

remitted their value to the UPA. By then, there had been only

three years of inactivity, not five. They should not have been

presumed abandoned at that time. The UPA erred in January 2015

by denying BBB-VSI's requested refund.13

 BBB-VSI claims that including their stored value cards within

the UUPA raises constitutional issues under the federal and state

constitutions. Its argument rests on the fact that BBB-VSI is

required to remit cash to the UPA after the date when the

13
 More than five years have elapsed and as stored value cards,
they are subject to the UUPA's report and remission requirements.
If the certificates have not been redeemed by the owner, then BBB-
VSI is required to report them to the UPA. N.J.S.A. 46:30B-46.

 18 A-2973-14T3
certificates are presumed abandoned, although the certificates are

redeemable by customers only for goods and services.

 Because we have concluded that the funds were prematurely

remitted to the UPA, and apparently were remitted at one hundred

percent of value instead of sixty percent, see N.J.S.A. 46:30B-

42.1(b), we have no need to reach these constitutional issues.

See State ex rel. J.A., 195 N.J. 324, 353 (2008) (Rivera-Soto, J.,

dissenting) (stating that "non-constitutional issue[s] be

addressed first before any constitutional question is broached");

see also, United States v. Scurry, 193 N.J. 492, 500 n.4 (2008)

("[W]e do not address constitutional questions when a narrower,

non-constitutional result is available.) The monies are to be

refunded, and these issues can be addressed based on any new report

and remission, if necessary.

 III.

 In A-4880-14, we reverse and remand to the UPA for an

appropriate refund with interest from the date when the UPA denied

BB&B's refund claim. In A-2973-14, we reverse because the

certificates are stored value cards, the value of which was not

due when it was remitted. We remand this case to the UPA, for the

submission of a new report from BBB-VSI in compliance with the

UUPA and also to calculate any appropriate refund and interest.

We do not retain jurisdiction of either appeal.

 19 A-2973-14T3