SUTER, J.A.D.
*486 In A-4880-14, Bed Bath & Beyond, Inc. (BB & B) appeals the May 21, 2015 final agency decision of the Treasury Department's Unclaimed Property Administration (UPA) that denied BB & B's claim for a refund of the value of certain unclaimed merchandise return certificates (certificates). In A-2973-14, BBB Value Services, Inc. (BBB-VSI) appeals the UPA's January 14, 2015 denial of a similar refund claim. We reverse the UPA's denial in A-4880-14 because BB & B was not required by New Jersey's Uniform Unclaimed Property Act, N.J.S.A . 46:30B-1 to -109 (UUPA), to remit these unclaimed certificates. In A-2973-14, we reverse for other reasons, concluding that the certificates constitute "stored value cards" within the meaning of the UUPA, but that their value was remitted prematurely.
*487 I.
BB & B is a large, nationwide retailer of domestic merchandise and home furnishings.
*1230 BBB-VSI is a wholly owned subsidiary of BB & B. For customers who return merchandise to BB & B without a receipt, BB & B issues a certificate, which is redeemable at BB & B or an affiliated store for other merchandise or services, but not for cash except as may be required by state consumer protection laws. Issued certificates include a bar code referencing data stored on BB & B's network and system database.[2] Customers who have receipts are able to obtain a refund in cash. Here, the cases involve only certificates issued for returns made without a receipt.
Some customers in New Jersey have not redeemed their certificates. From July 1, 1999 to June 30, 2010, the unused balances of these certificates had a remaining value, taken together, of $939,341.16. From 2004 and continuing annually until 2012, BB & B reported and remitted the value of the unredeemed certificates to the UPA as unclaimed property.
In January 2015, BB & B requested a refund of the value of these certificates, claiming "[s]ince the merchandise return certificates are ... not redeemable for cash, they are not 'claims for the payment of money' and thus are ... not covered by the UUPA" and "remain the property of BB & B." The UPA denied the request, treating the certificates as "credit memoranda" under the UUPA because they involved the "return[ ] of sold goods" and "not original sales." Concluding that BB & B had "an expectation of paying cash in this type of transaction," the UPA stated that "it is the underlying obligation that determines the correct statutory provision that applies and not the form of the instrument used to record the credit." Credit memoranda are presumed abandoned after three years of inactivity. Therefore, the UPA found that BB & B properly reported the unclaimed funds, and denied the refund. BB & B appeals the UPA's May 21, 2015 denial.
*488 From July 1, 2010 to June 30, 2011, BBB-VSI issued the same type of certificates to customers with New Jersey addresses, who returned merchandise without a receipt. The unused portion of those certificates totaled $244,552.57. In November 2014, BBB-VSI reported these as credit memoranda and remitted their aggregate value ($244,552.57) to the UPA.
In early January 2015, BBB-VSI requested a refund, claiming it had erred. It advised the UPA that the certificates constituted "stored value cards" under the UUPA. As such, they were not presumed abandoned until after five years of inactivity, and even then the amount presumed abandoned is "60% of the value of the card on the date the stored value card is presumed abandoned." Thus, BBB-VSI's position was that it had reported the unredeemed value too soon and paid too much.
The UPA denied the requested refund on January 14, 2015, contending that the certificates were credit memoranda under the UUPA. BBB-VSI appealed. With leave granted, the UPA filed an amplification of reasons that reiterated its contention that the "certificates do not represent original sales of services or merchandise but rather refunds for returned merchandise previously sold" and should be treated as credit memoranda under the UUPA.
With respect to the certificates issued before July 1, 2010, BB & B contends on appeal that the UPA erred in denying its requested refund. The certificates "do not represent obligations to pay money," they *1231 are not property within the scope of the UUPA, as construed by this court, and the escheat of these funds is inconsistent with New Jersey's consumer protection law involving refunds. Further, it contends the decision not to grant a refund violates a federal court injunction, and the decision violates provisions of the New Jersey and federal constitutions including the single-object rule, the contract clause, the takings clause, the due process clause and the federal common law. BB & B seeks interest on any refunded monies. *489 With respect to the certificates issued after July 1, 2010, BBB-VSI claims it had no obligation to remit funds for these stored value cards in 2014 and remitted forty percent more than required. If these are not stored value cards, then they are not subject to the UUPA at all because the certificates are not obligations to pay money. BBB-VSI contends that the escheat of the value of the stored value cards violates the federal and state constitutions.[3]
II.
Our scope of review of these administrative agency decisions is limited. Agency decisions are sustained unless they are arbitrary, capricious, or unreasonable; unsupported by substantial credible evidence in the record; or contrary to express or implied legislative policies. Saccone v. Bd. of Trs. of Police and Firemen's Ret. Sys. , 219 N.J. 369, 380, 98 A .3d 1158 (2014) ; Lavezzi v. State , 219 N.J. 163, 171, 97 A .3d 681 (2014). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas , 385 N.J.Super. 440, 443-44, 897 A .2d 442 (App. Div.), certif. denied , 188 N.J. 219, 902 A. 2d 1236 (2006). "[G]enerally, when construing language of a statutory scheme, deference is given to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme." Acoli v. N.J. State Parole Bd. , 224 N.J. 213, 229, 130 A .3d 1228 (2016) (citing U.S. Bank, N.A. v. Hough , 210 N.J. 187, 199, 42 A .3d 870 (2012) ). However, we are not "bound by [the] agency's interpretation of a statute or its determination of a strictly legal issue [.]" Lavezzi , supra , 219 N.J. at 173, 97 A .3d 681 (quoting Norfolk S. Ry. Co. v. Intermod a l Props., LLC , 215 N.J. 142, 165, 71 A .3d 830 (2013) ).
*490 A.
The UUPA was enacted in 1989 to "revis[e] New Jersey escheat law ( N.J.S.A. 2A:37-1 et seq. ) to conform with the 'Uniform Unclaimed Property Act (1981)' ...."[4] Senate Judiciary Committee Statement to S. 2093 (1988) (reprinted in N.J.S.A. 46:30B-1 ). The UUPA differed from the earlier "absolute" escheat laws where the owner forfeited property to the State by providing that "the title to unclaimed property does not vest in the State, but rather remains in the owner." Clymer v. Summit Bancorp , 171 N.J. 57, 63, 792 A .2d 396 (2002). In Clymer , the Court gave the Act a "broad interpretation in favor of the State[,]" id. at 67, 792 A .2d 396, recognizing that "the public policy of the State is in favor of the custodial taking of abandoned or unclaimed property by *1232 the State Treasurer." Ibid. (quoting Safane v. Cliffside Park Borough , 5 N.J.Tax 82, 88 (Tax 1982) ). The UUPA is to be "given a liberal interpretation in favor of the State and as to the position of any stakeholder or obligor." Ibid.
The "holder" of property presumed abandoned is required to file an annual report with the UPA and to remit such property to the State. N.J.S.A. 46:30B-46 to -49; N.J.S.A. 46:30B-57. A filer may ask to recover property erroneously reported. N.J.S.A. 46:30B-58.
Under the UUPA, "the State takes custody of the property and has full use of it until the rightful owner comes forward to claim it." Clymer , supra , 171 N.J. at 63, 792 A .2d 396. A person who claims an interest in the funds may file a claim. N.J.S.A 46:30B-77. The State pays interest on claims that are verified "for the period during which those monies were in the custody of the administrator ...." N.J.S.A. 46:30B-79. The prior holder of the unclaimed property paid to the administrator in good faith "is relieved of all liability to the extent of the value of the property paid ...." N.J.S.A. 46:30B-61.
*491 As originally enacted in 1989, the UUPA defined intangible property to include, among other things, "[c]redit balances, customer overpayments, security deposits, refunds, credit memos, unpaid wages, unused airline tickets, and unidentified remittances." L. 1989, c. 58, § 6 (emphasis added). The term "credit memos" was not defined in the Act. However, the Act expressly provided the time frame of inactivity needed before these types of property were presumed abandoned.[5] N.J.S.A. 46:30B-42. "[T]he amount presumed abandoned is the amount credited to the recipient." N.J.S.A. 46:30B-43. We concluded that "the categories of intangible personal property expressly covered by the [UUPA], are, as a practical matter, claims for the payment of money." In re the Nov. 8, 1996, Determination of State, Dep't. of Treasury, Unclaimed Prop. Office , 309 N.J.Super. 272, 276, 706 A .2d 1177 (App. Div. 1998), aff'd o.b. , 156 N.J. 599, 722 A .2d 536 (1999) (1996 Determination ).
At issue in 1996 Determination was the UUPA's treatment of gift certificates. New Jersey did not adopt the portion of the Uniform Unclaimed Property Act (1981)[6] that included gift certificates within the definition of intangible property. We determined this omission was intentional. Ibid. After examining the categories of intangible property expressly enumerated in the Act and other property not listed, but which we determined constituted intangible property,[7] we concluded that all such property were "claims which must be satisfied by the payment of readily ascertainable amounts of money, either on demand, or on determinable dates, or on the occurrence of specified contingencies."
*492 Id. at 277, 706 A .2d 1177. Because the Hilton gift certificates at issue in 1996 Determination could only be redeemed for services *1233 and merchandise, we concluded "the Legislature did not intend to include them among the 'intangible personal property' which must be reported and transferred to the State to be converted to cash for the State's use pursuant to the Act." Id. at 278, 706 A .2d 1177. We stated that the UUPA "presumably was not intended to[ ] impose an obligation different from the obligation undertaken to the original owner of the intangible property which it covers." Ibid. We concluded Hilton was not required to report unclaimed gift certificates under the UUPA.
The UUPA was amended in 2002. L. 2002, c. 35. The Legislature relocated the categories of property formerly listed as intangible to a new, all-inclusive definition for "property." L. 2002, c. 35, § 3 (codified as N.J.S.A. 46:30B-6(r) ). In doing so, the Legislature changed the term "credit memos," to "credit memorandum," but continued not to define the term. Ibid. "Gift certificates" were not added to the UUPA. There was no indication that "property" was to include anything other than claims for the payment of money.
The UUPA was amended in 2010, effective on July 1, 2010. L. 2010, c. 25. The definition of "property" continued to include "credit memorandum," but for the first time it included the term "stored value card." L. 2010, c. 25, § 1 (codified as N.J.S.A. 46:30B-6(r) ). A stored value card under the UUPA is defined as
a record that evidences a promise, made for monetary or other consideration, by the issuer or seller of the record that the owner of the record will be provided, solely or a combination of, merchandise, services, or cash in the value shown in the record, which is pre-funded and the value of which is reduced upon each redemption. The term 'stored value card' includes, but is not limited to the following items: paper gift certificates, records that contain a microprocessor chip, magnetic stripe or other means for the storage of information, gift cards, electronic gift cards, rebate cards, stored-value cards or certificates, store cards, and similar records or cards.
[ N.J.S.A. 46:30B-6(t) (emphasis added ).]
Under the 2010 amendment, a stored value card that had no activity within two years was presumed to be abandoned. L. 2010, c. 25, § 5. Certain types of stored value cards were exempt from *493 the UUPA. L. 2010, c. 25, § 5 (codified as N.J.S.A. 46:30B-42.1(e), (f) ). The 2010 amendments expressly applied to stored value cards "outstanding on and after July 1, 2010, including, but not limited to, those outstanding instruments issued before July 1, 2010." L. 2010, c. 25, § 9.
This amendment "change[d] the legal landscape in New Jersey ...." Am. Express Travel Related Svcs. Co. v. Sidamon-Eristoff , 755 F.Supp. 2d 556, 566 (D.N.J. 2010), aff'd , 669 F.3d 359 (3d Cir.), cert. denied , 568 U.S. 887, 133 S.Ct. 345, 184 L.Ed. 2d 157 (2012) (Amex). The 2010 Amendment subjected obligations redeemable for merchandise or services to the UUPA.
Relevant here, the UUPA was amended effective June 29, 2012 to include a cash back provision for consumers who redeemed stored value cards with refund balances of less than $5, but that provision did not apply to "a stored value card that is not purchased but is provided in lieu of a refund for returned merchandise." L. 2012, c. 14, § 1 (codified as N.J.S.A. 46:30B-42.1(h) ). It extended to five years the period of inactivity required before a stored value card was presumed abandoned. L.
*1234 2012, c. 14, § 1 (codified as N.J.S.A. 46:30B-42.1(a) ). For non-reloadable[8] stored value cards, the proceeds are "60% of the value of the card, in money, on the date the stored value card is presumed abandoned." L. 2012, c. 14, § 1 (codified as N.J.S.A. 46:30B-42.1(b) ).[9]
B.
Appeal A-4880-14 involves BB & B certificates, all of which were issued before July 1, 2010, when the UUPA was *494 amended to include stored value cards. Because these certificates were only redeemable for merchandise or services and they were not claims for the payment of money, we agree with BB & B that these certificates were not "property" within the meaning of the UUPA.
We held in 1996 Determination that "[a]ll of the categories of intangible personal property expressly covered by the [UUPA] or the 1981 Model Act, are, as a practical matter, claims for the payment of money." 309 N.J.Super. at 276, 706 A .2d 1177. We did not rest our decision on the fact that the Legislature intentionally decided not to include gift certificates within the UUPA. Rather, we determined the Hilton gift certificates were not intangible property under the UUPA because they were redeemable for merchandise or services.
BB & B's certificates, issued when a customer has no receipt, are only redeemable for merchandise and services. In this way, they are similar to the gift certificates in 1996 Determination . If the Hilton gift certificates were not property under the UUPA because they were not claims for the payment of money, then neither are the BB & B certificates.
The UPA contends that BB & B had an expectation of paying cash to its customers because those who had receipts could receive cash refunds. This appeal involves only certificates that were issued to customers who had no receipts. They are redeemable for merchandise or services. The record also does not show any deviation by BB & B from this policy. The UPA claims that some certificate holders might redeem their certificates in another state that has a consumer protection law requiring a cash refund. Others might purchase new merchandise, obtain a new receipt and then return that item for cash. However, even if this occurred, the UPA has not shown it would be anything more than de minimus, nor, more fundamentally, that it altered in any way BB & B's expectation that these certificates were issued for merchandise or services.
*495 The UPA cites no support for its contention the UUPA made a distinction between certificates that were purchased, referred to by the UPA as "original sales of services or merchandise," and these certificates that were issued as a credit for the return of merchandise. The language of the statute does not make this distinction nor was that any part of our reasoning in 1996 Determination .
*1235 Even if these were credit memoranda,[10] as the UPA contends, they still would be subject to the same "payment of money" limitation we identified in 1996 Determination . Thus, for the certificates issued before July 1, 2010, we have no need to determine if they are credit memos or something else, because they are not claims for the payment of money under the UUPA.
Because we conclude that the certificates issued before July 1, 2010, were not property under the UUPA, we do not need to address the constitutional claims made by BB & B regarding these certificates. See Worthington v. Fauver , 88 N.J. 183, 192, 440 A .2d 1128 (1982) ("an unnecessary decision on constitutional issues should be avoided.") We also have no necessity to address BB & B's claim that the certificates issued before July 1, 2010, are stored value cards, the enforcement of which is enjoined by the federal court.[11]
*496 Therefore, in A-4880-14, we reverse the UPA's denial of BB & B's refund. We remand the case to the UPA for calculation of the refund and interest[12] from May 21, 2015, when the refund request was denied. We do not retain jurisdiction.
C.
The certificates issued by BBB-VSI on or after July 1, 2010, require additional analysis because of the 2010 amendments that defined the term "stored value cards" and included them within the UUPA. See N.J.S.A. 46:30B-6(t). Although we have concluded the BB & B certificates are not credit memoranda under the UUPA, supra , we agree with BBB-VSI that the certificates issued on or after July 1, 2010, were stored value cards. We apply the plain language of the statute in reaching this conclusion.
"Our task here, as in every matter involving statutory construction, is the same: 'to divine and effectuate the Legislature's intent.' " Acoli , supra , 224 N.J. at 227, 130 A. 3d 1228 (quoting Perez v. Zagami , 218 N.J. 202, 209, 94 A .3d 869 (2014) ); accord State v. Buckley , 216 N.J. 249, 263, 78 A .3d 958 (2013). "The best evidence of that intent is the plain language of the statute, which thus serves as the starting point for statutory review." Ibid. Because the plain language is clear, we have no need to "look beyond the statutory text to extrinsic sources to aid in understanding the Legislature's will." Ibid.
A stored value card, like a certificate here, is a "record that evidences a promise, made for monetary or other consideration." BBB-VSI is the "issuer." The customer is the "owner" who "will be provided, solely or a combination of, merchandise, *1236 services, or cash in the value shown in the record, which is pre-funded and the value of [the card] is reduced upon each redemption." *497 N.J.S.A. 46:30B-6(t). BBB-VSI acknowledges these certificates are stored value cards.
The Legislature's 2010 amendment expanded the UUPA's scope by including instruments (stored value cards) issued for non-monetary consideration. L. 2010, c. 25, § 1 (codified as N.J.S.A. 46:30B-6(t) ). The 2012 amendments made this clear by providing that a stored value card could encompass a card that "is not purchased but is provided in lieu of a refund for returned merchandise ...." N.J.S.A. 46:30B-42.1(h). The inclusion of this language in the 2012 amendment undercuts the UPA's contention that the UUPA makes a distinction between original sales and returns because stored value cards include both.
A stored value card is presumed to be abandoned after five years of inactivity. N.J.S.A. 46:30B-42.1(a). These certificates were issued between July 1, 2010 and June 30, 2011. BBB-VSI reported the certificates as credit memoranda in November 2014 and remitted their value to the UPA. By then, there had been only three years of inactivity, not five. They should not have been presumed abandoned at that time. The UPA erred in January 2015 by denying BBB-VSI's requested refund.[13]
BBB-VSI claims that including their stored value cards within the UUPA raises constitutional issues under the federal and state constitutions. Its argument rests on the fact that BBB-VSI is required to remit cash to the UPA after the date when the certificates are presumed abandoned, although the certificates are redeemable by customers only for goods and services.
Because we have concluded that the funds were prematurely remitted to the UPA, and apparently were remitted at one hundred percent of value instead of sixty percent, see N.J.S.A. 46:30B-42.1(b), we have no need to reach these constitutional *498 issues. See State ex rel. J.A. , 195 N.J. 324, 353, 949 A .2d 790 (2008) (Rivera-Soto, J., dissenting) (stating that "non-constitutional issue[s] be addressed first before any constitutional question is broached"); see also , United States v. Scurry , 193 N.J. 492, 500 n.4, 940 A .2d 1164 (2008) ("[W]e do not address constitutional questions when a narrower, non-constitutional result is available.) The monies are to be refunded, and these issues can be addressed based on any new report and remission, if necessary.
III.
In A-4880-14, we reverse and remand to the UPA for an appropriate refund with interest from the date when the UPA denied BB & B's refund claim. In A-2973-14, we reverse because the certificates are stored value cards, the value of which was not due when it was remitted. We remand this case to the UPA, for the submission of a new report from BBB-VSI in compliance with the UUPA and also to calculate any appropriate refund and interest. We do not retain jurisdiction of either appeal.

We have not been provided with a copy of the certificate template.

The cases involve the same constitutional claims with one exception. BBB-VSI does not claim a violation of the federal or state contract clauses.

8C U.L.A. 225-346 (2014).

As enacted in 1989, the period of inactivity was five years. L. 1989, c. 58, § 1. In 2002, it was shortened to three years. L. 2002, c. 35, § 35. See N.J.S.A. 46:30B-42.

1996 Determination, supra, 309 N.J.Super. at 276, 706 A.2d 1177 refers to the Uniform Unclaimed Property Act (1981) as the 1981 Model Act.

See Hannoch Weisman v. Brunetti, 15 N.J.Tax 197 (App. Div. 1995) (tax refunds); see also State v. Elsinore Shore Assocs., 249 N.J.Super. 403, 592 A.2d 604 (App. Div. 1991) (casino chips and tokens).

The UUPA defines a "general purpose reloadable card" as one issued by a bank, regulated financial institution or licensed money transmitter that can be used at multiple merchants or service providers, is issued at a requested prepaid amount and may be reloadable, but is not marketed or labeled as a gift card. N.J.S.A. 46:30B-42.1(k).

A 2015 amendment relieved merchants of the responsibility to collect certain personal consumer data, not relevant to the issues here. L. 2015, c. 8, § 1.

Black's Law Dictionary defines "credit memorandum" as "[a] document issued by a seller to a buyer confirming that the seller has credited (i.e., reduced) the buyer's account because of an error, return, or allowance. Black's Law Dictionary 375 (7th ed. 1999). Merriam Webster defines a "credit memorandum" as: "a document issued by a seller to a customer as a confirmation that the seller has made a credit adjustment to the customer's account (as for merchandise returned or for errors)." https://www.merriam-webster.com/dictionary/credit% 20memorandum (last visited Sept. 6, 2017).

An injunction was entered in November 2010, prohibiting the UPA from "enforcing Chapter 25 retroactively against issuers of stored value cards with existing stored value card contracts that obligate the issuers to redeem the cards solely for merchandise or services." Amex ., supra, 755 F.Supp. 2d at 615. The scope of this injunction is not an issue before us.

The State acknowledges that it will pay interest on a refund under N.J.S.A. 46:30B-79.

More than five years have elapsed and as stored value cards, they are subject to the UUPA's report and remission requirements. If the certificates have not been redeemed by the owner, then BBB-VSI is required to report them to the UPA. N.J.S.A. 46:30B-46.