ISRAEL H. ALBERT, TRADING AS L. ALBERT & SON, PLAINTIFF-RESPONDENT, v. FORD MOTOR COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued February 8, 1934—Decided May 4, 1934.

For the appellant, *George W. C. McCarter*.

For the respondent, *Gross & Gross* (*Joel Gross*, of counsel).

The opinion of the court was delivered by

TRENCHARD, J. This appeal is by the defendant below from a judgment for the plaintiff in the Supreme Court entered on a verdict at the Bergen Circuit.

Plaintiff was engaged in the business of buying and selling machinery for the rubber trade. The Ford Motor Company, the defendant, had in its possession and available for sale, several of such machines, and offered and exhibited them for sale to the plaintiff. As will appear such negotiations resulted in a sale to the plaintiff by the defendant of several of the machines. That sale was confirmed by letter of January 28th, 1930, written by the defendant to the plaintiff. That letter is as follows:

"Ford Motor Company
3674 Schaefer Road
Dearborn, Mich.
January 28th, 1930.

L. Albert & Son
Trenton
New Jersey
In Replying Refer to 1-2 C. S. Lennie
Gentlemen:
Attention I. R. Albert

*Confirming negotiations with reference to the sale to you of certain rubber equipment* located at our Highland Park and St. Paul Plants, we are confirming below the equipment and prices at which we will dispose of it to you.

(Here follows an enumeration of the machines sold and prices.)

The (2) 84" Vaughn Mills are located at our St. Paul, Minn. plant, and the remainder at our Highland Park Plant. It is understood that all of the above *are sold* to you 'as is, where is' f. o. b. Highland Park and St. Paul. It will be impossible for us to release more than the (1) Banbury Mixer

included above. Should we be able to dispose of the others we will immediately get in touch with you. On receipt of a substantial deposit from you by certified check, we will prepare the above for shipment but will not release to the railroad company until your certified check for final payment is received. We will hold open this offer until January 31st.

Ford Motor Company<br/>C. S. LENNIE<br/>Engineering Department."

In accordance with the condition imposed by that letter in respect to the preparation of the machines for shipment plaintiff "mailed" a deposit of $5,000 by certified check, enclosed with his letter of January 30th, to the defendant. After the plaintiff had sent the check, he received two telegrams from the defendant, in one of which telegrams the defendant notified the plaintiff that it would be unable to deliver one of the machines embraced in the sale, and by the second telegram the defendant repudiated the entire sale.

Thereafter plaintiff instituted this action in the Supreme Court, alleging the sale as of January 28th, 1930, the readiness, ability and willingness of the plaintiff to pay the purchase price and the breach by the defendant. Defendant's answer so far as we need consider it, in view of the questions now presented, set up, first, a general denial; secondly, that "the contract of sale and the sale alleged in the complaint to have been made by and between the parties was thereafter and heretofore and on or about the 24th day of February, 1930, rescinded and abrogated by mutual consent."

At the trial, the plaintiff proved the memorandum of sale of January 28th, the making of a substantial deposit required for preparation for shipment, the receipt of the telegrams of repudiation sent to him by the defendant, and the damages accruing from the breach.

The defendant submitted testimony to the effect that the sale evidenced by the memorandum of January 28th was rescinded and abrogated on February 24th, 1930, by the mutual consent of the plaintiff and the defendant. But plaintiff denied that such a rescission or abrogation took place.

The jury found for the plaintiff and the defendant appeals.

The defendant contends that there was no contract as of January 28th, and this point is raised by an exception to the refusal to direct a verdict for the defendant and by an exception to the court's charge that there was such a contract.

We think that contention without merit.

The letter of January 28th written by the defendant to the plaintiff constituted a memorandum of sale previously negotiated and consummated, requiring that plaintiff forward a substantial deposit to the defendant before defendant should become obliged to prepare the equipment for delivery.

We have pointed out that prior to January 28th, 1930, the defendant exhibited and offered to the plaintiff the machines herein involved, and that the letter of January 28th written by the defendant to the plaintiff confirmed such negotiations with reference to the machines and the sale thereof to the plaintiff, the defendant to prepare the machinery for shipment on receipt of a substantial deposit from him by certified check, but not to release to the railroad company until a certified check for final payment was received; that on January 30th, immediately after receipt of this letter, plaintiff *mailed* a certified check for $5,000 to the defendant. It was admitted on the motion to direct a verdict that the defendant's telegram of repudiation was not received by the plaintiff until after he had sent the check for $5,000. The fact that $5,000 constituted a "substantial deposit," within the meaning of the letter, was also admitted. The plaintiff was therefore entitled to have the machines prepared for shipment. That was not done, but on the contrary, as stated, the sale was repudiated.

The trial court instructed the jury: "Now I have held as a matter of law that there was a contract as of January 28th." The defendant argues that this instruction was erroneous. We think not.

Where there is no ambiguity in a written instrument, it is the province of the court, and not of the jury, to determine its meaning. *Decker* v. *Smith & Co.*, 88 *N. J. L.* 630.

The language of the letter of January 28th appears to

mean precisely what the trial court construed it to mean, namely, a confirmation of a present sale. The letter states: *"Confirming negotiations with reference to the sale to you of certain rubber equipment * * *."* And further: *"It is understood that all of the above are sold to you* 'as is, where is,' F. O. B. Highland Park and St. Paul." There is, of course, language in the letter which looks to the future, and deals with performance. If it be contended that the letter as a whole is ambiguous and indefinite, we have then to consider the construction placed upon it by the defendant, for the construction put upon a written instrument by the parties themselves will ordinarily govern if, as here, the language used will reasonably permit of that construction, and their subsequent declarations will be considered. *Dordoni* v. *Hughes,* 83 *N. J. L.* 355; *Van Dyke* v. *Anderson,* 83 *N. J. Eq.* 568. Now, on February 3d, 1930, the defendant wrote the plaintiff:

"You have no doubt been somewhat confused in the last few days through receipt of telegrams from us regarding the rubber equipment *which we had agreed to sell you.* Since writing you January 28th, our executives have decided on a policy which will necessitate the retaining of some of the items *which we had agreed to sell you * * *.* We are extremely sorry that this situation arose and you will appreciate the fact that it was entirely beyond the writer's control."

It follows that the defendant's motion for a direction of a verdict upon the ground stated was properly denied and that the instruction in question was not erroneous.

The only other ground taken in the defendant's motion to direct a verdict was that the sale of January 28th was abrogated and rescinded by the defendant's agreement of February 24th for the sale of several pieces of machinery to plaintiff (some but not all of which were comprised in the sale of January 28th), which agreement the defendant also breached.

We think that the question of rescission and abrogation was for the jury, in view of the conflicting testimony.

It is true that defendant's witness Lennie testified that the sale of January 28th was rescinded and abrogated by the

mutual consent of the parties. But it is also true that the plaintiff denied such rescission and abrogation, testifying in effect that the sale of January 28th was not in any manner affected by the subsequent agreement of February 24th. Thus plaintiff testified that when in February the January contract was under discussion, Mr. Lennie said he "was awful sorry that he could not let the first transaction go through, but his superiors would not allow him." Then followed the question and answer to and by the plaintiff: "*Q*. And what did you do when he said that? *A*. I told him that I expect the Ford motor to carry through their contract as well as I would have to carry through my contract."

Now of course in passing upon defendant's motion for a directed verdict upon the ground that the contract in suit had been rescinded and abrogated by mutual consent, the court must take as true evidence supporting plaintiff's view and give him the benefit of legitimate inferences deducible therefrom. *Lozio* v. *Perrone,* 111 *N. J. L.* 549; 168 *Atl. Rep.* 764.

Applying that rule the question was properly submitted to the jury.

We find no error in the refusal to charge defendant's requests.

Several of them were properly refused in view of the rule that requests are properly refused which are based upon erroneous assumptions of fact. *Spence* v. *Hutchinson,* 102 *N. J. L.* 131. Some of those requests mistakenly assumed that the letters of January 28th was a mere offer of sale and not a memorandum of sale previously negotiated and consummated, and others were founded upon mistaken assumptions as to the state of the evidence.

Another request was properly refused under the rule that requests to charge are properly refused when they have been substantially covered by the instructions given. *Hintz* v. *Roberts,* 98 *N. J. L.* 768. This request had to do with the right of the jury to imply rescission of the contract from the facts and circumstances and conduct of the parties. The trial judge admitted the evidence tendered with respect to

the facts and circumstances and conduct of the parties, and then in effect instructed the jury that they might or might not find a rescission from the conflicting testimony. And in this connection we would say that the request the effect of which was to limit the question of rescission to the mere fact that another agreement was entered into in February was properly refused.

Another request was in effect that the defendant was not in default under its contract of January 28th, because the plaintiff failed to pay the balance of the purchase price and to furnish shipping instructions. But that request was properly refused because it conclusively appeared that the defendant had unequivocally repudiated the sale. Of course the law does not compel one to do a useless act. If, as conclusively appeared, the defendant was not going to perform in any event, it was useless for the plaintiff to send shipping instructions and the balance of the purchase price. *Williston on Contracts* 1463, § 767, citing *Gruen* v. *Ohl,* 81 *N. J. L.* 626; *Dordoni* v. *Hughes,* 83 *Id.* 355.

A careful examination of the grounds of appeal, the proceedings at the trial, and the requests to charge, satisfies us that the foregoing observations in effect dispose of every question raised and argued.

The judgment will be affirmed, with costs.

*For affirmance*—The Chancellor, Chief Justice, Trenchard, Parker, Case, Bodine, Perskie, Van Buskirk, Dear, Wells, Dill, JJ. 11.

*For reversal*—Lloyd, Donges, Kays, Hetfield, JJ. 4.