940 A.2d 1164

UNITED STATES OF AMERICA, ACTING THROUGH THE UNITED
STATES DEPARTMENT OF AGRICULTURE (HEREINAFTER
REFERRED TO AS "USDA") FORMERLY KNOWN AS FARM-
ERS HOME ADMINISTRATION, PLAINTIFF–RESPONDENT, v.
BARBARA SCURRY, DEFENDANT–APPELLANT, AND KEVIN
SCURRY, DEFENDANT.

Argued January 7, 2008—Decided February 21, 2008.

494

*Adam D. Greenberg* argued the cause for appellant (*Honig & Greenberg,* attorneys; *Mr. Greenberg* and *Sven E. Pfahlert,* on the briefs).

*Michael D. Bonfrisco* argued the cause for respondent (*Simeone & Bonfrisco,* attorneys; *Mr. Bonfrisco* and *Kimberly A. Ruggieri,* on the brief).

Justice RIVERA–SOTO delivered the opinion of the Court.

A homeowner facing foreclosure and dispossession is entitled to procedural protection. As one of several means of corroborating adherence to those procedural requirements, a party who secures an order allowing a sheriff's sale "shall, at least 10 days prior to the date set for sale, serve a notice of sale by registered or certified mail, return receipt requested, upon [the homeowner]." *R.* 4:65–2.

In this case, the foreclosing mortgagee did not serve the order authorizing the sheriff's sale of the homeowner's residence in the manner required by the *Rule,* and the homeowner only learned of the sale once she was served with a writ of possession commanding that she vacate her home. That same day, the homeowner visited her lawyer and deposited a significant sum of money for use in curing the arrears; the homeowner's lawyer promptly notified the mortgagee's lawyer of those facts. The foreclosure proceeded unabated, title to the property was transferred to the mortgagee, and the homeowner was dispossessed.

On the homeowner's application to vacate the sheriff's sale, both the trial court and the Appellate Division agreed that the mortgagee had failed to comply with the notice requirements of *Rule* 4:65–2. However, both courts further found that the homeowner's actions were barred by the application of the doctrine of laches and, thus, denied relief to the homeowner. We disagree and conclude that, in the circumstances presented, the doctrine of laches cannot serve to bar relief to this homeowner.

I.

Defendant Barbara Scurry was the title owner of certain premises located in Fairfield Township, Cumberland County, New Jersey (the property). Since 1997, the property had been encumbered by a mortgage to the benefit of plaintiff, the Farmers Home Administration of the United States Department of Agriculture. Defendant fell behind on her payments and, as a result, plaintiff sought to foreclose on its mortgage; a final judgment of foreclosure was entered against defendant on August 11, 2003. On April 1, 2004, after the final judgment of foreclosure was entered but before title, possession and ejectment were sought, defendant sought protection from her creditors pursuant to Chapter XIII of the United States Bankruptcy Code,[1] 11 *U.S.C.* §§ 1301–1330, a step that triggered an automatic stay of any proceedings against defendant. 11 *U.S.C.* § 362(a).

While the automatic stay was in place, defendant again fell behind on her mortgage payments, this time on those payments due after the filing of her bankruptcy petition (the post-petition arrears). As a result, on March 28, 2005, plaintiff sought and was granted relief from the automatic stay, 11 *U.S.C.* § 362(c), and proceeded to secure title to and, ultimately, possession of the premises. The property was scheduled for a sheriff's sale on April 19, 2005. Plaintiff was required to provide defendant at least ten days' prior written notice of the sheriff's sale and that

---

[1] This was defendant's third bankruptcy filing.

notice was to be made via "registered or certified mail, return receipt requested[.]" *R.* 4:65–2. Although plaintiff produced a copy of a letter dated April 5, 2005, which was addressed to defendant and explained that the sheriff's sale on the property was scheduled for April 19, 2005, plaintiff failed to demonstrate that its notice letter had been mailed in the manner required by the *Rule.* Plaintiff likewise was unable to produce any return receipt showing actual delivery of that notice. Nevertheless, the sheriff's sale was held on April 19, 2005. Plaintiff was the successful bidder and, on May 2, 2005, a sheriff's deed was issued vesting title to the property in plaintiff. Plaintiff then sought a writ of possession; that writ issued on July 25, 2005, and the Cumberland County Sheriff's Department personally served the writ of possession on defendant that same day.

Defendant immediately contacted her bankruptcy counsel and deposited $10,000 with her attorney to bring her mortgage arrears current. Eleven days later, by a letter dated August 5, 2005, defendant's bankruptcy counsel wrote to plaintiff's counsel as follows:

> I represent [defendant], the debtor in a Chapter 13 petition from which you obtained stay relief in March 2005. Apparently, you have effected a Sheriff's Sale subsequent to that. My client has just sent me a copy of the Writ of Possession in favor of [plaintiff] and she is completely dumbfounded as to how this sale could have occurred without notice to her. She is a resident of the property and she asserts that no one served her with notice of the pending sheriff's sale.
>
> What's more, on July 25, 2005 she came into my office and brought in Ten Thousand ($10,000.00) Dollars to be applied toward curing post-petition arrears and reinstating her Chapter 13 bankruptcy. So, I am dealing with a client who has worked very hard to get back on track. We were ready to make the application to reinstate the stay as against [plaintiff] and pay a substantial amount of money to [plaintiff] to bring things current and now we find that there has been a sheriff's sale. The only good thing that I can see from this is that [plaintiff] was the purchaser. That still leaves the opportunity for a resolution that might benefit both parties.
>
> Is your client interested in entering into a new transaction with [defendant] to either reinstate the Chapter 13 plan or effect some sort of a[n] occupancy agreement with her? I have substantial funds to work with and I would like to explore this promptly to perhaps achieve a resolution which would be satisfactory to all.

> Would you please contact me with regard to a possible resolution of this matter as suggested above and also provide my office with information as to how [defendant] was served notice of the sheriff's sale and when the sheriff's sale actually occurred.
>
> Thank you for your courtesies.

Inexplicably, plaintiff never responded to that entreaty. Instead, on September 8, 2005, defendant and her possessions were removed from the property (the "lock-out").

Three months later, on December 13, 2005, defendant moved before the Chancery Division, and sought an order vacating the sheriff's sale of the property due to plaintiff's failure to provide proper notice of the sheriff's sale. Plaintiff opposed that request, largely claiming that it had expended slightly over three thousand dollars in evicting defendant and that those sums, together with the delay between the September 2005 "lock-out" and the date of defendant's application, prejudiced plaintiff. The trial court heard argument on the matter on February 17, 2006. It initially ruled that "the notice of the sale was deficient, pursuant to *Rule* 4:65–2." It, however, further determined that "even though proper notice may not have been given, the defendant and her belongings were evicted from the property in September" and that "[h]er failure to act in a timely manner has prejudiced the plaintiff in that respect." As a result, it concluded that "the application to vacate the sheriff's sale after eight months, nine months, has to be denied." [2] It nevertheless expressed the hope that "perhaps—just perhaps [plaintiff] would entertain an offer by [defendant] to buy back the property."

---

[2] The trial court ruled on February 17, 2006. Defendant was dispossessed from the property on September 8, 2005, slightly more than five months earlier and only three months from the date of her application for relief. It appears that, although the trial court stated that the date of dispossession was the trigger date for when defendant should have acted due to plaintiff's failure to provide proper notice, the trial court still related defendant's obligation back to the date the sheriff's sale occurred, an event about which all parties admitted defendant was unaware.

Defendant moved for reconsideration in a timely manner, and plaintiff opposed that request also. This time, defendant focused on her belief that the trial court had barred relief based on the doctrine of laches and that "[i]n order to find laches there must be two elements, an unreasonable delay and significant prejudice to the party opposing the relief." In defendant's view, "[t]hat simply isn't present here." In response, plaintiff asserted that it would be prejudiced if the relief requested was granted because it had embarked on a course of action—the "lock-out" of defendant from the property on September 8, 2005, and the costs incurred thereafter—that inured to its detriment.

The trial court denied defendant's motion for reconsideration. It explained that "[a]lthough notice may have been deficient pursuant to *Rule* 4:65–2, it seems as though there are other interests to be worried about here." It identified those "other interests" as follows:

> The defendant had her—all her belongings removed from the property some four months prior to making the application to vacate the sale.[3] She was evicted. Even though she may not have been given proper notice of the sale, her failure to act timely has prejudiced the plaintiff in this respect.
>
> It is also unclear how the alleged $10,000 go towards satisfying her arrears. As indicated by the plaintiff in this case, there were three prior bankruptcies.

It concluded that "it's a[n] issue that I believe was properly resolved, my decision in the prior motion."

Defendant appealed and, in an unpublished opinion, the Appellate Division affirmed. The panel started from the premise that, "without dispute, the notice required by *Rule* 4:65–2 was not provided to defendant in advance of the [sheriff's] sale." It then explained that "the sole basis upon which defendant's motion to vacate the sale was denied was laches." That limitation caused it to couch the issue presented as

> whether [the trial court] mistakenly exercised [its] discretion in finding that under all of the pertinent circumstances that a four-and-one-half month delay between the time defendant learned of the sheriff's sale on July 25, 2005 and the time when she

---

[3] Again, defendant was "locked-out" on September 8, 2005, and she sought to vacate the sheriff's sale on December 13, 2005, three months and five days later.

filed her motion to vacate on December 13, 2005 was unreasonable and whether the prejudice asserted by the USDA was of a nature and magnitude that, combined with the delay, warranted application of the doctrine of laches.

The Appellate Division held that there was "no mistaken exercise of discretion under all of the circumstances." It reasoned that "[t]here is no evidence that defendant is in a position to pay off the mortgage debt or even to pay all costs incurred by the USDA because of defendant's delay in moving to vacate before the lock[-]out occurred, together with additional accrued interest, and arrears on the mortgage." It, therefore, concluded that

> [c]onsidering the age of this foreclosure action, the delays in its completion occasioned by defendant's bankruptcy proceeding, the additional delay after defendant became aware of the sheriff's sale, and the absence of evidence of financial ability by defendant to rectify the situation, we find no impropriety in the denial of defendant's motion to vacate the sheriff's sale because of laches.

 Defendant filed a petition for certification, which was granted.[4] 192 *N.J.* 70, 926 *A.*2d 855 (2007). For the reasons that follow, we reverse the judgment of the Appellate Division and remand the cause to the Chancery Division for further proceedings.

## II.

Defendant argues that the Appellate Division erred when it reviewed the trial court's determinations under the abuse of discretion standard. According to defendant, the trial court's

---

[4] Defendant's petition for certification presented three questions, two that implicate constitutional considerations, and one that raises a straightforward question of law: whether the courts below "improperly applied laches to bar the defendant relief, particularly where both courts did not find prejudice to the plaintiff." Because we do not address constitutional questions when a narrower, non-constitutional result is available, *Randolph Town Ctr., L.P. v. County of Morris*, 186 *N.J.* 78, 80, 891 *A.*2d 1202 (2006) (holding that "[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation"); *O'Keefe v. Passaic Valley Water Comm'n*, 132 *N.J.* 234, 240, 624 *A.*2d 578 (1993) (same; citing cases), we decide this case on the narrow grounds of whether the lower courts properly applied the doctrine of laches in these circumstances. Therefore, we need not and do not address the constitutional issues raised in defendant's petition.

refusal to vacate the sheriff's sale should have been subject to a de novo standard of review because "[w]here a trial court misconceives the applicable law, ... *de novo* review is required because 'the [trial court's] exercise of the legal discretion lacks a foundation and becomes an arbitrary act, however conscientious may have been the judge in the performance of it.' " *Paradise Enters. Ltd. v. Sapir,* 356 *N.J.Super.* 96, 102, 811 *A.*2d 516 (App.Div.2002) (quoting *Kavanaugh v. Quigley,* 63 *N.J.Super.* 153, 158, 164 *A.*2d 179 (App.Div.1960)), *certif. denied,* 175 *N.J.* 549, 816 *A.*2d 1050 (2003). Defendant further asserts that, even if the abuse of discretion standard was the proper standard of review, the trial court's determination cannot be sustained because the error of law was "tantamount to harmful error, *i.e.,* error clearly capable of producing an unjust result." *Cmty. Hosp. Group, Inc. v. More,* 365 *N.J.Super.* 84, 94, 838 *A.*2d 472 (App.Div.2003), *aff'd in part, rev'd in part,* 183 *N.J.* 36, 869 *A.*2d 884 (2005).

Substantively, defendant alleges the trial court erred in denying her application to vacate the sheriff's sale based on the doctrine of laches. She asserts that the doctrine of laches is inapplicable here because the delay asserted was not unreasonable and plaintiff has not suffered irreparable prejudice. Conversely, she claims that she took action as promptly as circumstances allowed, and that the filing of her motion four months post-sale was entirely reasonable. She notes that she moved to vacate the sheriff's sale three months after she was "locked-out;" that during that period she was in communication with her attorney, who in turn, was in communication with counsel for plaintiff; and that, because the property is vacant and plaintiff has no definite plans for it, the only prejudice suffered by plaintiff by reason of the delay is monetary, which can be remedied at law.

Plaintiff rejoins that the proper standard of review is the one applied by the Appellate Division: whether the trial court abused its discretion in denying defendant's motion to vacate the sheriff's sale. It claims that the abuse of discretion standard is applicable here because the "authority to set aside a sheriff's sale and order

a resale of property" is within the jurisdiction of the Chancery Division. *First Trust Nat'l Assoc. v. Merola,* 319 *N.J.Super.* 44, 49, 724 *A.*2d 858 (App.Div.1999).

In respect of the application of the doctrine of laches, plaintiff argues that defendant's failure to act promptly should be fatal to defendant's claim. Plaintiff contends further that the doctrine of laches applies because defendant's unreasonable delay in seeking relief resulted in prejudice to plaintiff; the prejudice identified by plaintiff is that, believing the matter to be concluded, it maintained the property, and paid taxes and insurance premiums thereon. It dismisses defendant's assertion that plaintiff has an adequate remedy at law by noting that, based on defendant's poor payment history, that remedy is illusory.

We address first the proper standard of review of decisions in respect of vacating or setting aside sheriff's sales. We then address the application of the doctrine of laches in these circumstances and the appropriate remedy that flows therefrom.

## III.

### A.

Because foreclosure proceedings seek primary or principal relief which is equitable in nature, a complaint in foreclosure is properly cognizable in the General Equity part of the Chancery Division. *See R.* 4:3–1(a)(1); Weinstein, *New Jersey Practice* § 28.5 (2000) ("A foreclosure action seeking a sale of the mortgaged premises ... should ordinarily be brought in the Chancery Division of the Superior Court of New Jersey"). And, it has long been the law of New Jersey that an application to open, vacate or otherwise set aside a foreclosure judgment or proceedings subsequent thereto is subject to an abuse of discretion standard. *Wiktorowicz v. Stesko,* 134 *N.J. Eq.* 383, 386, 35 *A.*2d 696 (E. & A.1944) (holding that, in proceedings in foreclosure, " '[t]he application to open the decree was addressed to the discretion of the court' " and that appellate courts "will not undertake in such a case to review the order for the purpose of determining whether it

shall substitute its discretion for that of the court of Chancery" (quoting *Masionis v. Romel*, 101 *N.J. Eq.* 780, 782, 138 *A.* 892 (E. & A.1927))). We see no reason to depart from settled precedent and, therefore, conclude that the appropriate standard of review of an application to open, vacate or otherwise set aside mortgage foreclosure proceedings is whether the trial court abused its discretion. It is against that standard that we evaluate defendant's substantive complaints.

## B.

The trial court held that defendant was barred from seeking to vacate the sheriff's sale of her home by the application of the doctrine of laches, and the Appellate Division sustained that determination. We cannot agree.

The doctrine of laches "is invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." *Knorr v. Smeal*, 178 *N.J.* 169, 180–81, 836 *A.2d* 794 (2003). *See also Borough of Princeton v. Bd. of Chosen Freeholders of Mercer County*, 169 *N.J.* 135, 157, 777 *A.2d* 19 (2001) (noting that " '[l]aches is an equitable defense that may be interposed in the absence of the statute of limitations,' and is defined as 'an inexcusable delay in asserting a right.'" (quoting *Nw. Covenant Med. Ctr. v. Fishman*, 167 *N.J.* 123, 140, 770 *A.2d* 233 (2001))); *County of Morris v. Fauver*, 153 *N.J.* 80, 105, 707 *A.2d* 958 (1998) (defining laches as " 'where there is unexplainable and inexcusable delay in enforcing a known right whereby prejudice has resulted to the other party because of such delay.'" (quoting *Dorchester Manor v. Borough of New Milford*, 287 *N.J.Super.* 163, 171, 670 *A.2d* 600 (Law Div.1994), *aff'd*, 287 *N.J.Super.* 114, 670 *A.2d* 576 (App.Div.1996))). "The policy behind laches is to discourage stale claims [and t]he time constraints imposed are flexible under the doctrine." *County of Morris, supra*, 153 *N.J.* at 105, 707 *A.2d* 958 (citations omitted).

"Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum

and the prejudiced party acted in good faith believing that the right had been abandoned." *Knorr, supra,* 178 *N.J.* at 181, 836 *A.*2d 794 (citations omitted). We have emphasized that "[t]he key factors to be considered in deciding whether to apply the doctrine are the length of the delay, the reasons for the delay, and the changing conditions of either or both parties during the delay." *Ibid.* (citation and internal quotation marks omitted). In the final analysis, "[t]he core equitable concern in applying laches is whether a party has been harmed by the delay." *Ibid.*

Our application of those principles to the facts presented here leads us to conclude that the application of the doctrine of laches to bar defendant from relief from the sheriff's sale constituted an abuse of discretion, that is, that the "decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." *Flagg v. Essex County Prosecutor,* 171 *N.J.* 561, 571, 796 *A.*2d 182 (2002) (citation and internal quotation marks omitted). Admittedly, plaintiff failed to follow clear procedural requirements that obligated it to serve notice of the sheriff's sale on defendant via "registered or certified mail, return receipt requested[.]" *R.* 4:65-2. Thus, the first notice defendant received that her property was being taken from her—a property that, by that point, had been in foreclosure proceedings for almost four years—was when she was served with the writ of possession in July 2005. That same day, she contacted her bankruptcy lawyer, explained that she had been served with a writ of possession, and deposited a significant amount of money with him to cure her arrears. Eleven days later, that lawyer sent a timely letter to counsel for plaintiff seeking an explanation for the process followed and offering a reasonable compromise. Nevertheless, no substantive response was received.[5] Slightly more than a month later, defendant was "locked-out" of her home and, three months after that, she made her first

---

[5] Plaintiff's response consisted solely of sending to defendant's bankruptcy counsel a copy of the April 5, 2005 letter that purportedly placed defendant on

application to vacate the sheriff's sale. Finally, since the date defendant was "locked-out" of her home, nothing has happened at or to the property; plaintiff continues to hold title to it and the record reflects that it remains vacant.

In the balance of equities that lies at the very foundation of the application of the doctrine of laches, the prejudice alleged by plaintiff simply does not match up to defendant having been dispossessed of her home and belongings without plaintiff's compliance with its procedural notice obligations. In these circumstances, where plaintiff cannot demonstrate compliance with the procedural requirements precedent to a valid mortgage foreclosure action, a conclusion to the contrary in respect of the applicability of the doctrine of laches lacks rationality, inexplicably departs from established policies, and rests, therefore, on an impermissible basis. Thus, despite the deference rightly owed to the Chancery Division in this context, its decision cannot be sustained. *See, e.g., Assoulin v. Sugarman,* 159 *N.J.Super.* 393, 397, 388 *A.*2d 260 (App.Div.1978) (holding that failure to comply with rule requiring notice of sheriff's sale requires voiding of sale); *Orange Land Co. v. Bender,* 96 *N.J.Super.* 158, 164, 232 *A.*2d 679 (App.Div.1967) (explaining that where mortgagor did not receive mandatory notice of sheriff's sale and had no knowledge of sale for five months, sale can be set aside). *Cf., Heinzer v. Summit Fed. Sav. & Loan Ass'n,* 87 *N.J.Super.* 430, 439, 209 *A.*2d 662 (App.Div.1965) (holding that laches bars relief where second mortgagee failed to seek relief for almost seven months after learning of sheriff's sale). We are constrained, therefore, to reverse the judgment of the Appellate Division.

## C.

That said, we must address the proceedings on remand. In performing that task, we are mindful of the time-

notice of the upcoming sheriff's sale. However, as noted earlier, that letter was not sent in compliance with *Rule* 4:65–2 and defendant's consistent denial of ever having receiving that letter remained unchallenged.

honored maxims that "the law does not compel one to do a useless act[,]" *Albert v. Ford Motor Co.*, 112 *N.J.L.* 597, 603, 172 *A.* 379 (E. & A.1934), and that equity follows the law. *Howell v. Teel*, 29 *N.J. Eq.* 490, 495 (Ch. 1878) (adopting principle of *equitas sequitur legem*, or equity follows the law). In the amalgam of these unique circumstances—where a foreclosure action had been pending for several years before judgment was entered; where the plaintiff in foreclosure fails to satisfy procedural notice requirements; where the defendant in foreclosure deposits substantial sums with her counsel to cure her arrears; where defendant's counsel communicates with plaintiff's counsel, offering to remedy defaults and receives no substantive reply; where the successful purchaser at the sheriff's sale is the original mortgagee/plaintiff in foreclosure; where the property remains vacant and has not been transferred to an innocent third party; and where there has now been a significant passage of time since the sheriff's deed was issued and defendant was dispossessed—it makes little sense to return the parties to the procedural juncture where the error first occurred: plaintiff's failure to provide defendant proper notice of the sheriff's sale.[6]

Instead, on remand, the trial court should determine first whether, within a reasonable period of time, defendant is able to redeem the property from plaintiff; the amount necessary for redemption should include all principal and interest due on the mortgage, plus any out-of-pocket costs for maintenance, repair, upkeep and insurance incurred by plaintiff in the period between the issuance of the sheriff's deed and the date of the remand hearing, but should not include the sums expended by plaintiff to dispossess defendant. If defendant cannot redeem the property within a reasonable period of time, as determined by the trial court, then there is no need to vacate the sheriff's sale and title will remain with plaintiff. If, however, defendant is able to

---

[6] The record reflects that the amounts due to satisfy plaintiff's mortgage lien exceed the fair market value of the property. Thus, attempting to restore the status quo ante appears futile.

redeem the property, she is to be afforded the opportunity she would have had if she properly had been noticed of the sheriff's sale of the property: the opportunity to purchase her property free and clear of all existing liens.

### IV.

The judgment of the Appellate Division is reversed, and the cause is remanded for further proceedings before the Chancery Division consistent with the principles set forth in this opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.