**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0880-15T2

RICHARD J. SPILLANE,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Argued May 15, 2019 – Decided July 16, 2019

Before Judges Accurso and Moynihan.

On appeal from the New Jersey State Parole Board.

Miriam L. Acevedo argued the cause for appellant (Hughes & Associates, attorneys; Miriam L. Acevedo, on the brief; Richard J. Spillane, on the pro se briefs).

Suzanne Marie Davies, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Lisa A. Puglisi, Assistant Attorney General, of counsel; Gregory R. Bueno, on the brief).

PER CURIAM

Appellant Richard J. Spillane first became eligible for parole after serving over twenty-seven years of a life sentence, imposed in October 1986, with thirty years of mandatory parole ineligibility for two counts of murder. He appeals from the New Jersey State Parole Board's final decision denying his parole request and setting a 240-month future parole ineligibility term (FET). Although he sets forth nine points of alleged error in his initial pro se brief,[1] and added additional contentions of error in his self-authored reply brief, we need not consider those arguments because the Board's failure to follow the procedures we mandated in Thompson v. New Jersey State Parole Board, 210 N.J. Super. 107 (App. Div. 1986), constrains us to reverse and remand this matter to the Board.

---

[1] Appellant contends: (1) the panel should have adjourned the hearing upon realizing he was experiencing mental health problems and should not have resumed until appellant was assigned a representative; (2) the panel refused to consider his mental illness at the time of the murders as a mitigating factor; (3) the prosecutor misrepresented evidence in a letter to the Board, thereby prejudicing the Board against appellant; (4) the panel overlooked letters of support; (5) the panel failed to read his written submissions, thereby violating appellant's constitutional rights; (6) the panel took inaccurate and incomplete notes, which prejudiced appellant; (7) this court should not consider the panel's confidential addendum; (8) the Board failed to explore paroling him to a program specializing in mental illness; and (9) the Board failed to show by a preponderance of the evidence the substantial likelihood he will commit a crime if released.

A-0880-15T2

Appellant's appointed counsel, pursuant to our January 31, 2018 order, reviewed an "in-depth psychological evaluation" authored by Richard Mucowski, Ph.D., at the Board's request and, in a supplemental brief argued:

> I. THE PAROLE BOARD'S DECISION SHOULD BE REVERSED BECAUSE IT RELIED UPON CONFIDENTIAL MATERIALS, INCLUDING A PSYCHOLOGICAL EVALUATION THAT SHOULD HAVE BEEN DISCLOSED TO APPELLANT WHICH VIOLATED [APPELLANT'S] RIGHT TO DUE PROCESS, EQUAL PROTECTION AND RESULTED IN FUNDAMENTAL UNFAIRNESS.
>
> II. REVIEW OF THE CONFIDENTIAL MATERIAL PROVIDED SHOWS THE PAROLE BOARD'S NEGATIVE FINDINGS ARE UNSUPPORTED BY SUBSTANTIAL EVIDENCE.

In Thompson, 210 N.J. Super. at 116, we addressed the contention that inmates should be entitled to view confidential material considered by the Board in making its parole determinations. We held "New Jersey prisoners have a protected liberty interest, rooted in the language of our parole statute, in parole release, and a resulting constitutional right to due process of law." Id. at 120. Thus, "[a]lthough parole is not a constitutional right, the prisoner's liberty interest is sufficient to invoke certain procedural protections among which is a limited right to disclosure of prison records in parole proceedings." Id. at 121 (citation omitted).

The regulation in effect at the time we decided <u>Thompson</u> required disclosure to inmates or parolees

> of adverse material considered at a hearing, provided such material is not classified as confidential by the Department [of Corrections] and provided disclosure would not threaten the life or physical safety of any person, interfere with law enforcement proceedings or result in the disclosure of professional diagnostic evaluations which would adversely affect the inmate's rehabilitation or the future delivery of rehabilitative services. If disclosure is withheld, the reason for nondisclosure shall be noted in the Board's files, and such information shall be identified as confidential.
>
> [<u>Id.</u> at 118 (quoting N.J.A.C. 10A:71-2.1(c)).[2]]

In analyzing the "flexible and dynamic concept" of due process as it relates to the legal process afforded to potential parolees, we took into account "[t]he safe operation of a prison" and the need to avoid threats to institutional security, including the "[d]isclosure of therapeutic matters . . . if it would interfere with prisoner rehabilitation and relationships with therapists." <u>Id.</u> at 123. We also considered that "prisoners are entitled not only to reasonable standards implementing a confidentiality exception which is no broader than its lawful purpose requires, but also to good faith determinations, made pursuant to those standards, whether file materials are to be withheld." <u>Id.</u> at 123-24.

---

[2] N.J.A.C. 10A:71-2.1 was recodified to N.J.A.C. 10A:71-2.2.

Although we decided N.J.A.C. 10A:71-2.1(c) was facially valid, id. at 124, we formulated a procedure to "sufficiently protect the prisoner's due process rights with the least intrusion on the [Department's] legitimate concern for confidentiality," id. at 125-26. Any document removed from a prisoner's parole file must be "identified as confidential and the reason for nondisclosure . . . noted in the Board's file." Id. at 126. We required the Board, "after making a parole decision adverse to the prisoner, to state in its decision whether any document marked confidential played any substantial role in producing the adverse decision and, if so, to record in its file which of them did so." Ibid.

> If the Board states that confidential materials played a substantial role in producing the adverse decision in a case appealed to this court, we will undertake to review the materials and determine the propriety of the decision to withhold them. If we conclude that nondisclosure was improper, the remedy might be a remand for reconsideration without the withheld materials, a remand for reconsideration after disclosure to the prisoner of the withheld materials, or, perhaps, an exercise of our original jurisdiction. The remedy will fit the needs of the individual case.
>
> [Ibid.]

N.J.A.C. 10A:71-2.1 has been amended several times since we decided Thompson. Language that confidential material should be disclosed provided "disclosure would not threaten the life or physical safety of any person, interfere

5

with law enforcement proceedings or result in the disclosure of professional diagnostic evaluations which would adversely affect the inmate's rehabilitation or the future delivery of rehabilitative services" was removed. 20 N.J.R. 2129(a) (Sept. 6, 1988). The regulation was amended again after passage of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13,[3] and recodified as N.J.A.C. 10A:71-2.2, on February 6, 2012, 43 N.J.R. 2144(b) (Aug. 15, 2011); 44 N.J.R. 270(a) (Feb. 6, 2012), but the language of the regulation since March 20, 1989, 21 N.J.R. 767(a) (Mar. 20, 1989), continues to read:

> Inmates or parolees shall be afforded disclosure of adverse material or information considered at a hearing, provided such material is not classified as confidential by the Board or the Department. If disclosure is withheld, the reasons for nondisclosure shall be noted in the Board's files, and such material or information shall be identified as confidential.
>
> [N.J.A.C. 10A:71-2.2(c).]

We disagree with appellant's argument that the regulatory amendments eliminated Thompson's requirement that confidential records be withheld only if release could pose a risk of harm to the inmate or others. Although language regarding threatening the life or physical safety of any person, interfering with

---

[3] The OPRA-related amendment did not render, as the Board argues, the provisions of N.J.A.C. 10A:71-2.2(c) applicable only to public disclosures. By its terms, it clearly relates to disclosure to inmates and parolees, not the public.

law enforcement, or disclosing diagnostic evaluations was deleted, 20 N.J.R. 2129(a) (Sept. 6, 1988); 21 N.J.R. 767(a) (Mar. 20, 1989), Thompson never required the release of confidential documents absent a showing of harm. While our analysis of the propriety of the Board's decision to withhold confidential documents that played a substantial role in an adverse parole decision considered whether disclosure would cause harm, Thompson, 210 N.J. Super. at 122, 123, we did not require the Board to make such a showing in order to withhold confidential documents from an inmate, id. at 126. We are also unpersuaded by appellant's argument that the "regulations now prescribe a blanket rule prohibiting disclosure to the inmate" of all psychological files. The same procedures, N.J.A.C. 10A:71-2.2(c), are equally applicable to the current regulatory scheme as they were to that in effect when we announced them in Thompson.

The Board did not follow those procedures in withholding Dr. Mucowski's report from appellant. Although it identified the report as confidential, the Board failed to note the reasons for nondisclosure in its decision denying appellant parole. The Board's counsel advanced in its merits brief, "it is clear that [the] rationale behind non-disclosure of the information was its nature as professionally prepared evaluative mental health records"; but that argument

neither complies with <u>Thompson</u>'s procedures nor informs us of the threat or harm sought to be avoided. And, because the document we must perpend is a psychological evaluation, the proffered reason does not elucidate why the "[d]isclosure of therapeutic matters . . . would interfere with prisoner rehabilitation and relationships with therapists," <u>Thompson</u>, 210 N.J. Super. at 123.

Further, although the Board acknowledged in a confidential addendum to its notice of decision that Dr. Mucowski's psychological report "was relied upon by the Board panel when they rendered their decision," we were not explicitly told if the report played "a substantial role" in producing the Board's adverse decision, <u>id.</u> at 126, 127. It appears from the addendum, however, that the report did play such a role considering the numerous and detailed portions of the report referenced therein that were also echoed in the Board's final decision. The three-member Board panel that considered appellant's parole noted "[a] document classified as confidential did play a significant role in" its decision but did not identify that document.

The Board has not proffered any reason to justify withholding the report. It does not contend Dr. Mucowski is appellant's treating doctor. It does not state what, if any, interference disclosure of the report would have on appellant's

rehabilitation or relationship with his therapist. In short, the Board did not relate its nondisclosure to a reason related to "[t]he safe operation of a prison," id. at 123.

We, therefore, remand this matter to the Board. We note, in compliance with our January 31, 2018 order, appellant has not been privy to the report although it was supplied to his appellate counsel. If the Board wishes to withhold its report, it must fully comply with Thompson's requirements. If it wishes to now disclose the report, reconsideration shall take place after appellant and counsel, if any, have the opportunity to review same and prepare to meet that evidence.

We also note the Board concurred with the three-member Board panel's reasons – as set forth in the panel's notice of decision – for setting a 240-month FET. While the Board complied with N.J.A.C. 10A:71-3.21(e)(1) by setting forth the reasons for establishing the FET more than seventeen years beyond the maximum extended period, N.J.A.C. 10A:71-3.21(a)(1); N.J.A.C. 10A:71-3.21(c),[4] the Board should also tether that lengthy period to the time needed for

---

[4] A standard FET of twenty-seven months applies when the Board denies parole to an inmate serving a sentence for murder. N.J.A.C. 10A:71-3.21(a)(1). The standard FET can be increased or decreased by nine months, that is, within a range of eighteen to thirty-six months, "when, in the opinion of the Board panel,

appellant to progress in his rehabilitation. In other words, the Board needs to justify the extraordinarily long FET by linking it to the future steps it requires appellant to take before he is again eligible for parole.[5] That statement of reasons would allow us to analyze the propriety of the FET. While we defer to the Board's "individualized discretionary appraisals," <u>Trantino v. N.J. State Parole Bd.</u>, 166 N.J. 113, 201 (2001) (quoting <u>Beckworth v. N.J. State Parole Bd.</u>, 62 N.J. 348, 359 (1973)), we must "engage in a 'careful and principled consideration of the agency record and findings.' While our scope of review is limited, we cannot be relegated to a mere rubber-stamp of agency action," <u>Williams v. Dep't. of Corr.</u>, 330 N.J. Super. 197, 204 (App. Div. 2000) (citation omitted) (quoting <u>Mayflower Sec. v. Bureau of Sec.</u>, 64 N.J. 85, 93 (1973)).

We note our January 31, 2018 order instructed appellant's appointed counsel to brief the issues of due process, equal protection and fundamental

_____

the severity of the crime for which the inmate was denied parole and the prior criminal record or other characteristics of the inmate warrant such adjustment." N.J.A.C. 10A:71-3.21(c). But in setting an FET, the Board is not limited in all cases to that eighteen to thirty-six months range. A panel may establish an FET outside the range if the standard FET "is clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior." N.J.A.C. 10A:71-3.21(d).

[5] We recognize the FET was not set 240 months in the future; the Board, considering all credits to which appellant is entitled, projected a parole eligibility date in May 2026.

unfairness. In light of our decision, however, we need not address these constitutional issues. United States v. Scurry, 193 N.J. 492, 500 n.4 (2008) ("[W]e do not address constitutional questions when a narrower, non-constitutional result is available."); see also BBB Value Servs. v. Treasurer, State of N.J., 451 N.J. Super. 483, 497-98 (App. Div. 2017).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0880-15T2