# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3033-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

J.M.G.,[1]

    Defendant-Appellant.

_____

Submitted February 12, 2024 – Decided March 4, 2024

Before Judges Chase and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 19-10-0125.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Samuel Clark Carrigan, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Jennifer E. Kmieciak, Deputy Attorney General, of counsel and on the briefs).

---

[1] The parties' initials are used to protect confidentiality, pursuant to R. 1:38-3(c)(12).

Appellant filed pro se supplemental briefs.

PER CURIAM

After the trial court granted the State's motion to admit defendant J.M.G.'s statement given following the administration of <u>Miranda</u>[2] warnings and denied defendant's motions to suppress physical evidence, defendant, a previously convicted sex offender, entered a guilty plea to first-degree aggravated sexual assault of A.C.B. when she was less than thirteen years old, N.J.S.A. 2C:14-2(a)(1). He was sentenced to a fifteen-year term of incarceration to be served without the possibility of parole under the Jessica Lunsford Act, N.J.S.A. 2C:14-2(a) and (d).

On appeal, defendant's counseled brief raises the following point for our consideration:

POINT I

THE COURT ERRED IN GRANTING THE STATE'S MOTION TO ADMIT DEFENDANT'S PURPORTED STATEMENTS BECAUSE THE STATE DID NOT PROVE A KNOWING AND INTELLIGENT WAIVER OF RIGHTS BEYOND A REASONABLE DOUBT.

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Defendant's pro se brief presents the following additional arguments for our consideration:

POINT I

THE COURT ERRED IN NOT GRANTING THE DEFENDANT['S] MOTION FOR REQUESTING A FRANKS[3] HEARING AND ALSO NOT SUPRESSING (SIC) EVIDENCE OBTAINED FROM [A] DEFECTIVE VERIZON SUBPOENA BASED ON MISUSE OF EVIDENCE AND PURPOSELY MISLEADING THE JUDGE WITH MISSTATEMENTS AND OMISSIONS OF MATERIAL FACTS CONTAINED WITHIN THE SEARCH WARRANT AFFIDAVIT AND SUBPOENA AT QUESTION.

POINT II

THE COURT ERRED IN NOT GRANTING THE DEFENDANT['S] MOTION FOR SUPRESSION (SIC) OF EVIDENCE FROM MOBILE APPLICATION KIK THAT WAS IMPROPERLY GAINED BY LAW ENFORCEMENT.

Based on our review of the record and the applicable legal principles, we reject defendant's arguments and affirm.

---

[3] Franks v. Delaware, 438 U.S. 154 (1978).

## I.

We glean the following facts from the record and the testimonial hearing conducted in the trial court during which the only witness presented by the State was Senior Parole Officer James MacFarlane. Defendant did not produce any witnesses.

In February 2018, New Jersey State Police Detective Jennifer Amato joined a youth chatroom on Chat-Avenue.com and adopted an undercover persona of a thirteen-year-old girl. A user named "john.01" sent Amato a private message. Amato told "john.01" she was a thirteen-year-old girl from New Jersey. "john.01" described himself as a sixteen-year-old boy from the Cherry Hill area who was 5'9", 160 pounds, athletic build, with brown eyes and hair and a "9" d**k." After Amato told "john.01" she was thirteen years old, "john.01" asked her how many boys she kissed, whether she was ready to do anything more than kissing, whether she shaved her genitals and what size bra she wore.

Amato then asked if "john.01" had a Kik Messenger account and provided him with her username. Shortly thereafter, Amato received a message on Kik from an account with the username "jonnoneya" and a display name of "Jonny Duh." After confirming that "Jonny Duh" was "john.01" on Chat-Avenue, Amato sent him a non-sexual image of an undercover officer posing as a

thirteen-year-old girl. "Jonny Duh" then sent a photo of himself. The photo depicted "a white male wearing only boxer briefs," but the camera flash obscured his face. "Jonny Duh" then sent a picture of his penis, followed by a picture of himself which showed his face and depicted an individual who was approximately fifty years old. He also asked Amato for a picture of her in her bra.

On February 28, 2018, Amato sent a preservation request to Chat-Avenue relating to chat activity of "@john.01" between the times of 2:06 p.m. and 3:31 p.m. on February 27, 2018. Chat-Avenue responded and indicated they had no information as to that usernames at that time but did have an individual with the handle "John.01"; however, the user's activity did not match the times requested. Chat-Avenue provided an IP address for "John.01." The IP address geolocated to Medford and was serviced by Verizon. Verizon identified the IP address as belonging to J.G. in Medford Township. Amato, who continued to communicate with "Jonny Duh" over Kik Messenger, searched law enforcement databases for J.G. She learned J.G. had a son, defendant. Amato also learned defendant is a registered sex offender from Burlington County.

Amato then contacted defendant's parole officer, Ben Devuyst, who confirmed defendant was a registered sex offender and that defendant was the

individual in the pictures provided by "Jonny Duh." Amato continued to communicate with "Jonny Duh" into June of 2018. The State then applied for, and was granted, a search warrant for defendant's father's residence in Medford Township. Police executed the search warrant on June 12, 2018.

Officer MacFarlane testified at the Miranda hearing that he had been a parole officer for six years and in June 2018 he was assigned to defendant. On June 12, he went to defendant's residence with other officers after receiving information defendant may have been violating conditions of his parole supervision. After the officers were let into the residence, Officer MacFarlane explained to defendant the allegations concerning his violation of parole conditions. He then handcuffed defendant. At that time, he removed a Miranda card from his tactical vest pouch and read defendant his rights. A copy of a similar Miranda card was admitted into evidence. Officer MacFarlane testified defendant was properly informed of his protections afforded under Miranda. He stated:

> The [Miranda] warnings would be number one, that [defendant] would have the right to remain silent and refuse to answer any questions. Number two, anything that he would say would be used against him in a court of law. Number three, that he have the right to consult with an attorney at any time and have him or her present before and during questioning. Number four, that if he could not afford an attorney, one would be provided, if

6

he so decided, prior to any questioning. And number five, that a decision to waive these rights is not final and he may withdraw his waiver whenever he wished, before or during the questioning. And then I confirmed with [defendant] that he was read his Miranda rights, he had an understanding of those rights and that he would like to waive those rights and speak with me.

Officer MacFarlane further testified he verbally confirmed defendant heard his rights. He never threatened or struck defendant, and from his perspective defendant understood and then verbally waived his rights.

After defendant waived his rights, the officers inspected defendant's room and observed two cell phone chargers near defendant's bed connected to a surge protector. Officer MacFarlane stated he was concerned because the terms of defendant's parole barred him from using or possessing any internet-capable device without prior approval and at that time defendant only had one approved device. The officers found the approved device in defendant's bedroom.

The officers then transported defendant to the Medford Township Police Department where they spoke with other task force officers, including members of the New Jersey State Police Digital Technology Investigations Unit. According to Officer MacFarlane, while at the Medford police station, Sergeant Cullen from the Parole Board went to the vehicle where defendant had been

7

placed and re-confirmed that he understood his <u>Miranda</u> rights and that he was being arrested.

Officer MacFarlane then drove defendant to his father's house where a search warrant was to be executed. Once the search was completed and Officer MacFarlane learned that a laptop and cell phone that matched the charger in defendant's room were recovered, he asked defendant, who was still handcuffed and sitting in MacFarlane's vehicle, if he was familiar with those items and if they belonged to him. Defendant confirmed they did. His father also confirmed defendant was the sole owner and user of the cell phone.

The officers and defendant returned to Medford Police Station, and defendant was placed in an interview room and re-Mirandized. At that point, defendant declined to give a statement. On cross-examination, Officer MacFarlane testified that, although he had a pen, he did not have defendant sign the <u>Miranda</u> card, and although he had a smart phone, he did not record the reading of defendant's <u>Miranda</u> rights.

The motion judge found Officer MacFarlane's testimony to be credible, indicating his "tone and demeanor on direct and cross-examination" led the court to believe that he had no intent to deceive it. Additionally, he was found to have "a good recollection of the facts" and "direct knowledge of his interactions with

8                                                                              <span>A-3033-21</span>

defendant."  The motion court also held the officer's testimony was "reasonable" and "he did not make any inconsistent or contradictory statements."

Detectives conducted a forensic review of the cell phone recovered at defendant's father's house and discovered several social-media-networking applications, including Kik Messenger.  In addition, they located the images sent to Amato.  During a complete forensic examination of the cell phone, police found a thumbnail image that appeared to depict child pornography.

The forensic examination also revealed a chat on Kik Messenger between "Jonny Duh" and another individual with the handle "~Furry Girl~." "~Furry Girl~" was later identified as A.C.B., an eleven-year-old girl from Michigan. The conversations occurred in June 2018 while "Jonny Duh" was also communicating with Amato.  "Jonny Duh" asked A.C.B. how old she was, and she informed him she was eleven years old.  "Jonny Duh" asked A.C.B. multiple sexually explicit questions, and sent her a picture of a penis, which was later determined to be the same image he sent to Amato and found on his device. "Jonny Duh" also asked A.C.B. to send him sexually explicit photographs via Kik Messenger.

Police later recovered various images of A.C.B. "in which she exposed her breasts, sat on a toilet with her legs spread exposing her vagina and

A-3033-21

penetrated her vagina with her finger." A.C.B. was located in Michigan and interviewed by law enforcement. She told police defendant began chatting with her on another social-media platform, Discord, before transitioning over to Kik Messenger. Defendant then began pressuring A.C.B. to send him nude pictures. A.C.B. confirmed she and defendant exchanged nude photographs of themselves. She also confirmed "that she photographed herself inserting her finger into her vagina and sent the image to defendant pursuant to . . . defendant's instructions."

## II.

On appeal, defendant argues the trial court erred in finding his waiver of <u>Miranda</u> rights prior to his initial statement was voluntary, knowing, and intelligent. He argues the State did not prove beyond a reasonable doubt that he waived his <u>Miranda</u> rights because he did not sign a <u>Miranda</u> form and the waiver of his rights was not recorded. Although not argued below, defendant argues his statement should have been suppressed because the police could have waited until they got back to the police station to record his interrogation.

To admit a statement obtained during a custodial interrogation, "the State must 'prove beyond a reasonable doubt that the suspect's waiver was knowing, intelligent, and voluntary in light of all the circumstances.'" <u>State v. Tillery</u>, 238

10

N.J. 293, 316 (2019) (quoting State v. Presha, 163 N.J. 304, 313 (2000)). The court considers factors including the defendant's "age, education, intelligence, previous encounters with law enforcement, advice received about [their] constitutional rights, the length of detention, the period of time between administration of the warnings and the volunteered statement, and whether the questioning was repeated and prolonged in nature or involved physical or mental abuse." State v. Timmendequas, 161 N.J. 515, 614 (1999).

A waiver of a defendant's Miranda rights must not be the product of police coercion, but instead must be knowing, intelligent, and voluntary based on "the totality of the circumstances surrounding the custodial interrogation." State v. A.M., 237 N.J. 384, 398 (2019). The evidence must establish beyond a reasonable doubt the statement was given voluntarily and not because the defendant's will was overborne. State v. Knight, 183 N.J. 449, 462 (2005) (citing State v. Galloway, 133 N.J. 631, 654 (1993)).

Generally, on appellate review, a trial court's factual findings on a motion to suppress a defendant's statement to the police will be upheld when they are supported by sufficient credible evidence in the record. State v. S.S., 229 N.J. 360, 374 (2017). We do not disturb the motion court's factual findings unless those findings are so clearly mistaken as to demand intervention in the interests

of justice. Ibid. This is particularly true where the findings of the trial judge "are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). However, we owe no deference to the motion court's conclusions of law, which are reviewed de novo. A.M., 237 N.J. at 396.

Contrary to defendant's arguments on appeal, there is no requirement that Officer MacFarlane's testimony be corroborated by video or other evidence. At the time they executed the search warrant, there was no indication that police were aware of the facts that would later give rise to the aggravated sexual assault charge involving A.C.B. The motion judge had the ability to observe Officer MacFarlane and was aware that there was no video or signed Miranda card. Additionally, defendant did not present any witnesses to counter the State's credible witness. In short, we defer to the motion court's credibility and factual findings, and thus affirm the order admitting defendant's statement and defendant's conviction for the aggravated sexual assault of A.C.B. Defendant's arguments go more to the weight of such evidence rather than its admissibility.

Defendant asserts for the first time on appeal that a recording was required under Rule 3:17 because the officers could have held defendant in the police

station the entire time. That <u>Rule</u> sets forth electronic recordation requirements for custodial interrogations of those charged with certain enumerated serious offenses. <u>State v. Hubbard</u>, 222 N.J. 249, 263 (2015). Significantly, the electronic recordation requirement only applies to "custodial interrogations conducted in a place of detention." <u>R</u>. 3:17(a). "Place of detention" under the <u>Rule</u> means:

> a building or a police station or barracks that is a place of operation for a municipal or state police department, county prosecutor, sheriff or other law enforcement agency, that is owned or operated by a law enforcement agency at which persons are or may be detained in connection with criminal charges against those persons.

Here, defendant was Mirandized at his house when he was first placed in custody. Officers asked defendant if he understood his rights while in the police car. This clearly does not constitute a "place of detention" as expressly defined by <u>Rule</u> 3:17. Under these circumstances, the State is not required to prove that one of the seven enumerated exceptions to electronic recordation in <u>Rule</u> 3:17(b) applies because the questioning did not occur in a "place of detention" as defined in paragraph (a).

Moreover, after the execution of the search warrant, defendant was brought back to the station so a formal recorded statement could be taken as part of the continued investigation. At this point he exercised his Fifth Amendment

13

right to remain silent, which the officers scrupulously honored. After hearing firsthand from the parole officer, the motion judge fully credited the officer's testimony that he verbally advised defendant of his <u>Miranda</u> rights before questioning him. We give deference to the trial judge's factual findings based on his opportunity to hear and see the witness. There is no basis to jettison these factual findings based on defendant's argument that <u>Rule</u> 3:17 required electronic recordation of his statements at his father's residence.

III.

When a defendant challenges the veracity of a search warrant affidavit, a <u>Franks</u> hearing is required "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included . . . in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56. The defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." <u>State v. Howery</u>, 80 N.J. 563, 567 (1979) (quoting <u>Franks</u>, 438 U.S. at 171).

Only where a defendant also establishes "the allegedly false statement [was] necessary to the [issuing judge's] finding of probable cause, [does] the

14

Fourth Amendment require[] that a hearing be held at the defendant's request." State v. Desir, 245 N.J. 179, 196 (2021) (quoting Franks, 438 U.S. at 155-56). "These allegations should be supported by an offer of proof including reliable statements by witnesses." Howery, 80 N.J. at 567 (citing Franks, 438 U.S. at 171). Where the defendant fails to make this substantial preliminary showing, "no hearing is required." Franks, 438 U.S. at 172. "[A] Franks hearing is not directed at picking apart minor technical problems with a warrant application; it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents." State v. Broom-Smith, 406 N.J. Super. 228, 240 (App. Div. 2009).

A defendant may also challenge a warrant affidavit on grounds the affiant made a material omission in the application. State v. Marshall, 148 N.J. 89, 193 (1997) (stating "[m]aterial omissions in the affidavit may also invalidate the warrant"). The Franks hearing "requirements apply where the allegations are that the affidavit, though facially accurate, omits material facts." State v. Stelzner, 257 N.J. Super. 219, 235 (App. Div. 1992).

We review a trial court's decision denying a Franks hearing for an abuse of discretion. Broom-Smith, 406 N.J. Super. at 239. An abuse of discretion will be found where the "decision [was] made without a rational explanation,

inexplicably departed from established policies, or rested on an impermissible basis." United States v. Scurry, 193 N.J. 492, 504 (2008) (alteration in original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Defendant's claim that a remand is mandated for a Franks hearing is unsupported by a credible showing that the detectives made false misrepresentations or material omissions in their affidavit. Defendant argues the search warrant contained a material misstatement because Chat-Avenue gave Detective Amato information for "John.01" not "john.o1." He further claims the IP address of his father's house was obtained for the wrong "John.01."

The affidavit for the search warrant reflected Detective Amato's chatroom conversations and that the investigation led to defendant's father's house. Based on the totality of the circumstances, the motion court was "unpersuaded that the inaccuracy between 'John.01' and 'john.01' represented either intentional wrongdoing or reckless disregard for the truth. There [was] no credible evidence presented to support the argument that the affidavit's interchangeable uses of usernames were [n]either a reckless disregard for the truth nor intentional wrongdoing."

In addition, the motion court found a hearing "is not necessary when probable cause exists even after the alleged false statements are excised."

Significantly, the affidavit stated the same IP address was used by "jonnoneya" to access Kik Messenger. Detective Amato continued to communicate with "jonnoneya" on Kik Messenger and he sent her pictures of himself. Officers were "able to confirm that the photographs [Detective Amato] received were of [defendant]," and although the target address was not defendant's registered address with the Parole Board, Officer DeVuyst "believe[d] he [was] staying at the target location and using devices there to commit the crime of Attempted Obscenity for Persons under 18." It is immaterial whether information from Chat-Avenue was or was not included in the affidavit because there was still ample probable cause to support the search warrant for defendant's father's residence.

Nor was a <u>Franks</u> hearing required because the affidavit omitted information that the Kik Messenger account for "jonnoneya" was also linked to a Comcast account subscribed to by another person at an address in Glassboro. The fact that the Kik account was linked to additional IP addresses does not diminish the probable cause to search defendant's father's residence. This is especially so because the search-warrant affidavit stated that the IP address linked to defendant's father's residence was used by "jonnoneya" to access Kik

Messenger on February 27, 2018—the date Detective Amato began chatting with "Jonny Duh."

### IV.

Defendant's argument that the State should have secured a wiretap order to obtain his subscriber information is without merit as this issue has already been decided by our Supreme Court in State v. Reid, 194 N.J. 386, 401 (2008). There, the Court held subscriber information kept by an Internet Service Provider is constitutionally protected but can be lawfully obtained with a grand jury or trial subpoena, as was done here. Ibid.

To the extent we have not specifically addressed any remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3033-21