**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0408-17T4

EDWIN L. SIEGEL,

      Appellant,

v.

STATE OF NEW JERSEY,
DEPARTMENT OF TREASURY,
UNCLAIMED PROPERTY
ADMINISTRATION,

      Respondent.

_____

Argued October 2, 2019 – Decided December 22, 2020

Before Judges Ostrer, Vernoia and Susswein.

On appeal from the Department of the Treasury, Unclaimed Property Administration, Claim No. 400047580.

Scott B. Piekarsky argued the cause for appellant (Phillips Nizer, LLP, attorneys; Scott B. Piekarsky, of counsel and on the briefs; Jennifer O'Neill, on the briefs).

Jonathan Peitz, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney

General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Marc Krefetz, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Edwin Siegel appeals from a final decision of the Unclaimed Property Administration, Department of Treasury, denying his claim for abandoned property — specifically, the proceeds of two bearer bonds — escheated to the State. Siegel argues that his mother-in-law gifted him two New Jersey Highway Authority revenue bonds, each in the principal amount of $5,000. But he lost the bonds. He tried to claim the proceeds based on photocopies of the bonds' title pages. The Administration rejected Siegel's claim, because it decided it was only obliged to pay a holder of the original bonds.

We conclude that the Administration must consider the veracity of Siegel's claim. If the Administration is persuaded that Siegel is entitled to reissuance of the bonds under the applicable provisions of the Uniform Commercial Code (UCC) or under the equitable standard for such relief, and if Siegel provides the Administration with reasonable protection against loss, then the Administration must pay his claim.

A-0408-17T4

## I.

The factual record is sparse.[1]  Siegel contends in his brief — without a supporting certification or affidavit, see R. 1:6–6 — that his mother-in-law gifted the bonds to him and that, at some point, he lost them.  And in one of the claim forms that he submitted to the Administration, he "ratifies and re-affirms as true" his claim that he was the legal and equitable owner of two bonds. However, he does not deny that the bonds were unregistered bearer bonds.

Among his claim documents, Siegel sent the Administration photocopies of each bond's title page and legal opinion.  According to the photocopies, the bonds were "Parkway Improvement Revenue Bond[s], 1971 Series."  The $5,000 principal amount was due January 1, 2011, with 6.5% interest payable each

---

[1]  Siegel includes in his appendix various documents — including correspondence with financial institutions — which he evidently did not present to the agency, and the agency evidently did not consider (according to the agency's Statement of Items Comprising the Record (SICR)).  See R. 2:5–4(b). However, we cannot be sure.  The SICR omitted the Administrator's August 7, 2017 decision letter, as well as correspondence from Siegel's counsel to which the decision letter refers.  Given those oversights, we suspect that the SICR may have omitted other documents as well.  See Mandel, Current N.J. Appellate Practice § 22.1-2(e) (2021) (stating that the SICR is designed "[t]o ensure that the parties and the appellate court have a complete understanding of the record at the administrative level").  However, Siegel did not object to the SICR.  So, we will confine ourselves to the documents identified therein, the decision letter, and the relevant correspondence from Siegel's counsel that the Administration evidently received.

January 1 and July 1. Neither party produced an exemplar of the full text of the bond.

In a December 2014 response to Siegel's inquiry, US Bank — apparently the fiscal agent for the Highway Authority's bonds — informed Siegel that the bond funds were escheated to the State on March 15, 2000.[2] The bank referred Siegel to the Administration. Siegel then sought payment from the Administration, which responded by asking him to submit various application forms along with "the original bond/coupon." Siegel sent the required documents — except for the original bonds. The Administration then reiterated that it needed "the original bond/coupon." Through counsel, Siegel renewed his claim, arguing that had the bonds not escheated, he would have been able to replace the bonds through the issuer. During this period, Siegel provided no additional evidence of how he received and then lost the bonds, or of how he might have tried to find them.

Ultimately, the Administrator wrote to Siegel's counsel stating that "possession of the original instrument is required" because a "[a] bearer bond is

---

[2] We acknowledge that the Highway Authority was abolished and its functions absorbed by the New Jersey Turnpike Authority under L. 2003, c. 79. For convenience, we will continue to refer to the Highway Authority as the entity obliged to pay the bearer of the bonds.

payable to the bearer of the original instrument." Thus, if the Administration paid Siegel, it would still be liable to a subsequent claimant who possessed the bond. This appeal followed.

## II.

The principal issue on appeal is whether the Administration erred in demanding that Siegel present the original bond. We conclude that it did. Because the Administration assumed the Highway Authority's payment obligation, see In re Nov. 8, 1996 Determination of the Unclaimed Prop. Off., 309 N.J. Super. 272, 278 (App. Div. 1998), aff'd o.b., 156 N.J. 599 (1999), the Administration was obliged — as the Highway Authority would have been — to consider a claim for relief from the loss of the bearer bonds.

Before addressing that conclusion, however, we dispatch Siegel's contentions that (1) the bank, as the Highway Authority's agent, prematurely transferred the bond funds to the Administration in 2000, eleven years before the bonds' maturity, and (2) the Administration failed to provide notice that it had received the property. We address these points in turn.

When unclaimed property is deemed abandoned, New Jersey's version of the Uniform Unclaimed Property Act governs. N.J.S.A. 46:30B−1 to −109. A governmental obligation like a bond is "presumed abandoned" if it is "unclaimed

for more than one year after it became payable or distributable."  N.J.S.A. 46:30B–41.2.  Such abandoned property escheats to the State.  That is so even where a bank physically possesses the funds representing the public entity's indebtedness, if "the obligor is the . . . state . . . or any of [its] authorities."  Ibid.  Cf. Clymer v. Summit Bancorp., 171 N.J. 57, 67–68 (2002) (holding that one-year dormancy period under prior version of N.J.S.A. 46:30B–41.2 governed registered and bearer bonds issued by governmental entities, even where the trustee bank possessed unclaimed funds).

Siegel first sought payment from the bank in late 2014, almost four years after the January 2011 maturity date.  Thus, even if the bank had waited for the bonds' maturity date before transferring the bond funds, Siegel would have been too late.[3]

Siegel's notice claim also fails.  Although the Act requires notice to owners of escheated property, Siegel has not established that the bank, or the State, knew that he ever owned the bonds.  The Act's notice requirement

---

[3]  The Administration also notes that the Authority may have called its bonds more than a year before March 15, 2000 — the date on which the bank transferred the bond funds to the State.  Siegel provided no proof that the bonds remained outstanding until their original maturity date, or that they were not callable.  See 64 Am. Jur. 2d Public Securities and Obligations §§ 300 to 308 (2020) (discussing in general an issuer's right to "call" bonds, that is, to require holders to submit their bonds for payment before maturity).

specifies that, by November 30 of the year after the year when the Administration received escheated funds, the Administrator must publish a newspaper notice, two weeks in a row, in the county of a property owner's last-known address. N.J.S.A. 46:30B–51. The notice must contain the names and last-known addresses of "each person appearing . . . from the records of the holder to be the owner of property of the value of $50 or more presumed abandoned." N.J.S.A. 46:30B–52(a); N.J.S.A. 46:30B–47 (emphasis added). The State could not have included Siegel's name and address if the bank — the holder of the bond funds — did not supply them; and Siegel has failed to demonstrate that the bank had any record of his ownership.

Furthermore, we discern no merit to Siegel's contention that lack of notice deprived him of due process. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party . . . if its name and address are reasonably ascertainable." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983). Siegel seems to recognize that the Administration could have sent him a mailed notice only if his "name and address [were] reasonably ascertainable" — and they were not. Instead, he

7

A-0408-17T4

argues that the Administration was obliged to publish a general notice stating that it had received funds from bearer bonds, and listing the bond numbers.

Providing such notice may be good policy. But we are not persuaded that due process required it; escheating the bond funds did not "adversely affect" Siegel's "liberty or property interests." See ibid. Escheat under the current Act, as opposed to pre-1989 versions of the Act, did not deprive Siegel of his ownership rights.[4] See Clymer, 171 N.J. at 63. And, because we hold that the Administration should offer Siegel the same relief that the Highway Authority would have had to offer, Siegel suffered no adverse consequence from transferring the bond funds to the Administration's custody.

We turn now to the heart of this appeal: whether the Administration may insist that a claimant present the original bearer bond to secure payment. As with review of agency action generally, we shall not sustain an Administration decision that is "arbitrary, capricious, or unreasonable; unsupported by substantial credible evidence in the record; or contrary to express or implied legislative policies." BBB Value Servs., Inc. v. Treasurer, 451 N.J. Super. 483, 489 (App. Div. 2017) (reviewing Administration decision under the Act). In

---

[4] We do not address whether escheat of intangible property may adversely affect an owner's property interests in other ways — for example, if the receiving government liquidates abandoned securities.

8

exercising our review, we are not bound by the Administration's statutory interpretation, although we may give it some deference. Ibid.

The Administration submits that its "obligation to pay is the same obligation to pay vested in the fiscal agent of the Highway Authority, subject to the same prerequisites to and limitations on payment." We agree. As we stated in In re Nov. 8, 1996 Determination, 309 N.J. Super. at 278, "the Act cannot, and therefore presumably was not intended to, impose an obligation different from the obligation undertaken to the original owner of the intangible property which it covers." However, the Administration errs in contending that Siegel's failure to produce the original bonds would have doomed his claim for payment from the Highway Authority or its agent.

Generally speaking, a bearer bond is payable only to the person who possesses it. "Ownership of a bearer bond . . . is presumed from possession and is transferred by physically handing over the bond. The bondowner obtains interest payments by presenting bond coupons to a bank that in turn presents the coupons to the issuer's paying agent." South Carolina v. Baker, 485 U.S. 505, 508 (1988).[5] Because the Administration states, and Siegel does not deny, that

---

[5] By contrast, "[o]wnership of a registered bond is recorded on a central list, and a transfer of record ownership requires entering the change on that list. The

the 1971 Highway Authority revenue bond was a bearer bond, we assume that it was negotiable by delivery. "[A]n instrument . . . payable to bearer . . . may be negotiated by transfer of possession alone," N.J.S.A. 12A:3–201(b), and "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument," N.J.S.A. 12A:3–203(a).[6]

But the UCC provides a remedy for the owner of a lost negotiable instrument. A person may be entitled to enforce an instrument even if the person is "not in possession of the instrument." N.J.S.A. 12A:3–301. A person who satisfies N.J.S.A. 12A:3–309 is so entitled. Ibid. Section 309 imposes three requirements for "[a] person not in possession of an instrument . . . to enforce the instrument": (1) "the person was in possession of the instrument and entitled

_____

record owner automatically receives interest payments by check or electronic transfer of funds from the issuer's paying agent." Ibid. (footnote omitted).

[6] Unless the 1971 revenue bond contained a term expressly stating that it was not negotiable, the bond evidently was a "negotiable instrument," if it contained "an unconditional promise . . . to pay a fixed amount of money, with . . . interest . . . described in the promise" and if it met additional three requirements: it was "payable to bearer"; it was "payable . . . at a definite time"; and it did "not state any other undertaking or instruction by the person promising . . . payment to do any act in addition to the payment of money." N.J.S.A. 12A:3–104(a); see 28 Egon Guttman, Modern Securities Transfers § 1.7 (4th ed. 2018) (stating that a bearer bond "might fit" the UCC definition of a negotiable instrument).

to enforce it when loss of possession occurred"; (2) "the loss of possession was not the result of a transfer by the person or a lawful seizure"; and (3) "the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process."  N.J.S.A. 12A:3–309(a); see Invs. Bank v. Torres, 243 N.J. 25, 42 (2020) (discussing sections 301 and 309).  The owner of the lost instrument must also "prove the terms of the instrument."  N.J.S.A. 12A:3–309(b).

If the owner of the lost instrument satisfies that burden, the owner must also protect the obligor against loss if the original turns up in the hands of a person entitled to enforce it.  A "court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument."  Ibid.  The code does not specify the form of protection, stating only that "[a]dequate protection may be provided by any reasonable means."  Ibid.

Even without a statutory remedy, "[c]ourts of equity had jurisdiction to grant relief in cases involving the loss or theft of various instruments."  Santos

11

v. First Nat'l State Bank, 186 N.J. Super. 52, 63 n.9 (App. Div. 1982); see also

Karafa v. N.J. State Lottery Comm'n, 129 N.J. Super. 499, 505 (Ch. Div. 1974).

In Karafa, the court noted that "the accidental or unintentional loss . . . of a

written instrument does not, as a general rule, change or impair the obligation

of the parties thereto." Karafa, 129 N.J. Super. at 505 (quoting 52 Am. Jur. 2d

Lost and Destroyed Instruments § 2, at 116). Although losing an instrument

"may impair the owner's evidence of the right he claims thereunder, he may still

enforce the right and . . . may maintain an appropriate action to recover on the

obligation." Ibid. The instrument may be "re-executed or restored . . . by the

voluntary act of the party, [or] resort may be had to a court empowered to grant

such relief." Ibid.

However, the equity court's intervention was based on its "power to order

indemnity against loss," and "requiring indemnification was the rule in cases

where bills of exchange . . . or promissory notes were alleged to have been lost

or destroyed." Santos, 186 N.J. Super. at 63 n.9; see also 2 Peter W. Salsich, Jr.

et al., State & Local Government Debt Financing § 12.49 (James A. Coniglio

ed., 2d ed. 2020) (stating that publicly issued "[b]onds that have been lost, stolen

or destroyed may be replaced if the owner supplies satisfactory evidence of

12                                                      A-0408-17T4

ownership and that the bonds . . . have been lost, stolen or destroyed" and noting that the issuing entity may require "provisions for indemnification").

Therefore, Siegel was, and is, entitled to seek reissuance of the bearer bonds by the Highway Authority or its agent bank as a remedy in equity or under the code. Because the Administration bears the same obligation as did the Highway Authority, we conclude that the Administration must grant Siegel an opportunity to make that same showing. We express no opinion regarding whether Siegel can meet his burden.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13